David G. CADE, Plaintiff and Appellant,

v.

ZIONS FIRST NATIONAL BANK,
Defendant and Appellee.

No. 970311–CA.

Court of Appeals of Utah.

April 2, 1998.

Anthony L. Rampton and Robert A. Garda, Salt Lake City, for Appellant.

James R. Holbrook and T. Richard Davis, Salt Lake City, for Appellee.

Before DAVIS, P.J., WILKINS, Associate P.J., and GREENWOOD, J.

---

## OPINION

GREENWOOD, Judge.

David G. Cade appeals from three separate district court orders: (1) an order denying his Motion to Vacate Award of Arbitrators and granting Zions First National Bank's Motion to Confirm Arbitration Award; (2) the underlying Order Compelling Arbitration; and (3) an order denying his motion to disqualify attorney T. Richard Davis and Davis's firm, Callister Nebeker & McCullough. We reverse the district court's arbitration orders and remand the dispute for trial. We affirm the district court's order denying disqualification.

## BACKGROUND

### Arbitration

On December 13, 1988, Cade executed a two-year employment contract with Zions First National Bank (the Bank). Cade's responsibilities primarily involved the purchase and sale of SBA loans, a form of securities not regulated by either the Securities Exchange Commission (SEC) or the National Association of Securities Dealers, Inc. (NASD).

On January 19, 1989, Cade completed a Form U–4 Uniform Application for Securities Registration or Transfer (Form U–4). On the Form U–4, Cade listed Zions Discount Brokerage (Zions Discount), a sister corporation of the Bank, as the firm through which he was registering. Although both the Bank and Zions Discount were at the time wholly-owned subsidiaries of Zions Bancorp, Inc., only Zions Discount was a member of the NASD and could deal in securities regulated by both the SEC and the NASD. The Bank was not qualified to be a member of the NASD and none of Cade's work for the Bank involved SEC- or NASD-regulated securities. Cade listed the Bank on the Form U–4 as his employer but did not list it as an entity with which he intended to maintain concurrent registration.

The Form U–4 included a provision under which Cade agreed "to arbitrate any dispute, claim or controversy that may arise between me and my firm ... or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register." The only organization with which Cade registered was the NASD.

The Bank terminated Cade's employment on April 19, 1991. On July 11, 1991, Cade initiated a lawsuit against the Bank in connection with that termination. On May 28, 1993, the Bank filed a Motion to Compel Arbitration pursuant to Cade's Form U–4. Cade argued that there was no arbitration agreement between himself and the Bank. On August 3, 1993, after a hearing, the district court issued an Order Compelling Arbitration, ruling that the Form U–4 arbitration provision "extends to and includes ... the subject matter of this action." The district court then stayed Cade's action and certified its order as ripe for appeal.

In August 1993, Cade executed a Uniform Submission Agreement for NASD Arbitration. The NASD arbitration commenced on August 26, 1993, and an award in favor of Cade was entered in April 1996.

Subsequently, Cade filed a Motion to Vacate Award of Arbitrators[1] and the Bank

---

1. Cade cited Utah Code Ann. § 78–31a–14(1)(e) (1996) to support his motion. That section provides for vacation of an arbitration award if "there was no arbitration agreement between the parties to the arbitration proceeding." Utah Code Ann. § 78–31a–14(1)(e) (1992). Cade also cited the Federal Arbitration Act, which allows vacation "where the arbitrators exceeded their powers." Federal Arbitration Act, 9 U.S.C. § 10(d) (1970) (amended 1990) (redesignated as § 10(a)(4)).

responded by filing a Motion to Confirm Arbitration Award. On December 17, 1996, the district court entered an Order and Judgment denying Cade's motion and granting the Bank's motion to confirm.

### Disqualification of Davis and Callister Nebeker & McCullough

During the NASD arbitration proceeding, Cade was primarily represented by attorneys Daniel R. Bartley and Sharon Green. On May 13, 1996, after the arbitration award was issued, Cade notified Bartley and Green that he had obtained new counsel—his current counsel—to challenge the arbitration award. The relationship between Bartley, Green, and Cade thereafter disintegrated quickly. Throughout these proceedings, the Bank has been represented by T. Richard Davis, of Callister Nebeker & McCullough.

On September 18, 1996, Cade filed a motion to disqualify both Davis and his firm, alleging Davis had improperly gained confidential information about the case from Bartley and Green. All the allegedly inappropriate communications, however, occurred *after* the arbitration award was issued. The district court denied Cade's motion to disqualify but indicated Cade could renew his motion should the arbitration award be vacated.

### ISSUES AND STANDARD OF REVIEW

On appeal, Cade challenges both the district court's arbitration orders, renewing his argument that no arbitration agreement exists between himself and the Bank. The Bank counters that it could enforce the Form U–4 arbitration provision because, alternatively, (1) the Bank's corporate relationship with Zions Discount allows it to enforce the provision; (2) the Bank is a "person associated with a member" or an "other" under the NASD Arbitration Code who can enforce the provision; or (3) the parties intended their disputes to be governed by the provision.

▬ "[I]n reviewing the order of a trial court confirming, vacating, or modifying an arbitration award, 'we grant no deference to the district court's conclusions [of law] but review them for correctness,' and 'we review the district court's factual findings under a

clearly erroneous standard.'" *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 948 (Utah 1996) (citation omitted). In this case, the district court, without an evidentiary hearing on the disputed facts, concluded that Cade's Form U–4 constituted an arbitration agreement between Cade and the Bank. Because this conclusion was a legal one, we review it for correctness. *See id.*

▬ The Bank argues that even if the Form U–4 does not constitute an agreement between Cade and the Bank, Cade waived his right to challenge the arbitration award, as the district court suggested, by actively participating in the arbitration proceeding instead of continuing to challenge the district court's order. Whether a party waives his or her right to challenge an arbitration award by submitting to arbitration after being ordered to do so is a legal question which we review for correctness. *See Chandler v. Blue Cross Blue Shield*, 833 P.2d 356, 360 (Utah 1992) ("Whether the trial court employed the proper standards [in determining waiver] presents a legal question which is reviewed for correctness.").

▬ Finally, Cade argues that the district court erred in denying his motion to disqualify Davis and his firm. "The ultimate decision to grant or deny a motion to disqualify counsel is within the trial court's discretion, and we will not overturn that decision absent an abuse of that discretion." *State v. Gray*, 851 P.2d 1217, 1227 (Utah Ct.App.1993) (citation omitted). Thus, we reverse only if we find "no reasonable basis for the decision." *Crookston v. Fire Ins. Exch.*, 860 P.2d 937, 938 (Utah 1993).

### ANALYSIS

#### Arbitration

Cade argues that the district court's arbitration orders must be reversed because both are based upon the erroneous conclusion that Cade's U–4 Form arbitration provision extends to this dispute.

▬ "'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has

not agreed so to submit.'" *AT & T Tech., Inc. v. Communications Workers,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (citation omitted). This is because "a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 942, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995). Thus, "[a]lthough there is a presumption in favor of arbitration, a party will not be required to arbitrate when it has not agreed to do so." *Tropical Cruise Lines, S.A. v. Vesta Ins. Co.,* 805 F.Supp. 409, 412 (S.D.Miss.1992) (citations omitted). "[W]e must first conclude that arbitration is a remedy which has been bargained for by the parties. Only when such agreement on arbitration exists may we encourage arbitration by liberal interpretation of the arbitration provisions themselves." *Reed v. Davis County Sch. Dist.,* 892 P.2d 1063, 1065 (Utah Ct.App.1995).

■ Furthermore, as a contractual right, arbitration "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Lorber Indus. of Cal. v. Los Angeles Printworks Corp.,* 803 F.2d 523, 525 (9th Cir.1986) (citation omitted); *see also McCarthy v. Azure,* 22 F.3d 351, 353 (1st Cir.1994) (holding person who executed arbitration agreement as corporate officer could not "compel arbitration of [related] claims lodged against him as an individual"); *Conway v. Icahn & Co., Inc.,* 787 F.Supp. 340, 342–44 (S.D.N.Y.1990) (holding broker could not compel client to arbitrate where agreement broker had client sign was between client and "clearing broker," which was not party to action).

■ Finally, although enforcement of a Form U-4 is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (1970 & Supp. 1997), *see Williams v. Cigna Fin. Advisors, Inc.,* 56 F.3d 656, 659 (5th Cir.1995), where the issue is whether particular persons or entities are parties to and may enforce an arbitration agreement, federal law incorporates state contract and agency law. *See First Options,* 115 S.Ct. at 1924 ("When de-

ciding whether the parties agreed to arbitrate ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts.").

### A. Bank as Sibling Corporation

■ The Bank's first argument in support of the district court's orders appears to be that, as a sibling corporation of Zions Discount, it was empowered to step into its sister's shoes and enforce the Form U-4 arbitration provision. We hold, however, that the existence of a corporate relationship, without more, is insufficient to give the Bank such power.

■ A corporation is entitled to a presumption of separateness from a sister corporation even if both are controlled by the same individuals. *See American Renaissance Lines, Inc. v. Saxis Steamship Co.,* 502 F.2d 674, 677 (2d Cir.1974). Thus, for the Bank to assume Zions Discount's position under the arbitration provision of the Form U-4, its relationship with Zions Discount must be sufficient to overcome that presumption. On the present record, it is not.

For example, the Bank does not claim it enjoys an agency relationship with Zions Discount. *See, e.g., McCarthy,* 22 F.3d at 356–61; *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith,* 7 F.3d 1110, 1122 (3rd Cir. 1993); *Lorber Indus.,* 803 F.2d at 524. Nor does the record support any possible claim that the Bank is a third-party beneficiary of Cade's Form U-4. *See Ringwood v. Foreign Auto Works, Inc.,* 786 P.2d 1350, 1354 (Utah Ct.App.1990) (stating for "'third-party beneficiary to have a right to enforce a right, the intention of the contracting parties to confer a separate and distinct benefit upon the third party must be clear.'" (citation omitted)); *accord McCarthy,* 22 F.3d at 362–63. Furthermore, even if the Bank was an agent or third-party beneficiary, its dispute with Cade does not arise out of the subject matter of the Form U-4 contract. *See, e.g., Pritzker,* 7 F.3d at 1121–22 (allowing arbitration where claims involve same misconduct as that alleged against signatory and arise out of contract containing arbitration provision).[2]

2. Other possible theories are similarly unavailing to the Bank because the facts herein do not

The Bank makes no allegations supporting an argument that its relationship with Zions Discount is anything more than mere corporate affiliation. Affiliation alone, however, is insufficient to allow the Bank to enforce Cade's Form U–4 arbitration provision.

### B. Bank as "Person Associated with a Member" or "Other"

■ The Bank also argues it can enforce the arbitration provision because it is a "person associated with a member" or an "other" who, under the NASD Code, can compel arbitration. We disagree.

Section 1 of the NASD Code provides for

the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the [NASD], ...:

(1) between or among members;

(2) between or among members and public customers, *or others;* and

(3) between or among members, registered clearing agencies....

NASD Arb.Code, Part I, § 1, CCH NASD Manual at ¶ 3701 (1989) (emphasis added). Section 8(a) of the NASD Code provides:

[a]ny dispute, claim or controversy eligible for submission under Part I ... between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of:

(1) a member against another member;

(2) a member against a person associated with a member or a person associated with a member against a member; and

(3) a person associated with a member against a person associated with a member.

*Id.,* Part II, § 8(a), CCH NASD Manual at ¶ 3708. Finally, the NASD bylaws define "person associated with a member" or "associated person of a member" as:

(m) ... every sole proprietor, partner, officer, director, or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member, whether or not any such person is registered or exempt from registration with the Corporation pursuant to these By-Laws.

NASD By-laws, Article 1(m), CCH NASD Manual at ¶ 1101 (1989).

Under case law interpreting these various NASD provisions, the Bank, as a corporation, cannot be an "associated person" of NASD-member Zions Discount unless it is a "sole proprietor, partner, officer, director, or branch manager of any member"; otherwise, an "associated person" must be a natural person. *See McMahan Sec. Co. v. Forum Capital Mkts.,* 35 F.3d 82, 87 (2d Cir.1994) (holding limitation to natural person does not apply where party is sole proprietor, partner, officer, director, or branch manager of member); *Tays v. Covenant Life Ins. Co.,* 964 F.2d 501, 503 (5th Cir.1992) ("Read in its entirety, the definition of associated person ... seems calculated to exclude corporate entities."). Because the Bank has not claimed to be a sole proprietor, partner, officer, director, or branch manager of Zions Discount, and because the Bank is not a natural person, it cannot be a "person associated with a member" under the NASD by-laws.

■ The Bank's assertion that it is then an "other" under the NASD Code also finds

support those theories. *See Fried. Krupp. GmbH. v. Solidarity Carriers, Inc.,* 674 F.Supp. 1022, 1027 (S.D.N.Y.) (allowing party to assert nonsignatory subsidiary's claim where party has "potential indemnification obligations" to that nonsignatory), *aff'd without opinion,* 838 F.2d 1202 (2d Cir.1987); *Carlin v. 3V Inc.,* 928 S.W.2d 291,

294–97 (Tex.Ct.App.1996) (noting other courts order arbitration where "charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable" or claims did not exist outside very agreement calling for arbitration).

no support in case law. In *Prudential Ins. Co. v. Shammas,* 865 F.Supp. 429, 431 (W.D.Mich.1993), the court allowed Prudential to enforce a Form U–4 arbitration provision as an "other" where, among other things, Prudential *was* listed on the form as a dealer with whom the party would maintain registration, and the party acknowledged that "his act of registering with NASD was as part of his employment with Prudential." In this case, however, the Bank is nowhere identified on the Form U–4 as a party intended to benefit from its provisions.

In *McMahan,* the court held that a registered investment advisor of a member may be an "other" under the NASD Code where that advisor is "sufficiently immersed in the underlying controversy." 35 F.3d at 87–88.

> A person who is neither a member nor an associated person is nevertheless appropriately joined in the arbitration where that party plays an active role in the securities industry, is a signatory to a securities-industry arbitration agreement (or is an instrument of another party to the arbitration), *and* has voluntarily participated in the particular events giving rise to the controversy underlying the arbitration.

*Id.* at 88 (emphasis added). In this case, the Bank is neither a signatory to the NASD arbitration agreement nor an instrument of a signatory. Furthermore, it has not claimed it actively participated in the securities industry regulated by the NASD.

Accordingly, we conclude *Kresock v. Bankers Trust Co.,* 21 F.3d 176 (7th Cir.1994), is dispositive. In that case, the court considered whether Bankers Trust, a sister corporation to BT Securities Corporation, could enforce a former employee's Form U–4 arbitration provision. Bankers Trust was a foreign banking corporation; BT Securities was a member of NASD. *See id.* at 177. After working for Bankers Trust for several years, the employee began preparing to sell NASD-regulated securities with the idea that she might transfer to BT Securities. As part of that process, she completed a Form U–4, on which she named BT Securities as her "firm" and noted her current employment with Bankers Trust. *See id.* However, the employee never actually worked for BT Securi-

ties and "made sure not to engage in any business that involved the type of work performed by BT Securities" while at Bankers Trust. *Id.* When she later initiated suit against it, Bankers Trust moved for arbitration. The Seventh Circuit rejected Bankers Trust's attempt, explaining that "Bankers Trust is not a member of the NASD, a person associated with a member of the NASD, a public customer, or an 'other.'" *Id.* at 178.

Likewise, because the Bank is neither a "person associated with a member" nor an "other" under the NASD Arbitration Code, it cannot enforce the Form U–4 arbitration provision under those theories.

### C. Form U–4 and Parties' Intent

 Finally, the Bank argues that, despite the NASD Arbitration Code, the district court's orders were proper because the parties intended the Form U–4 to cover this dispute. The Bank asserts that Cade was required to complete the Form as a prerequisite for employment and that Cade even threatened the Bank with arbitration prior to his termination. Cade, however, claims completion of the Form had nothing to do with his employment, and that the Bank suggested registration through Zions Discount merely to accommodate Cade's desire to keep his securities licenses active. He notes his actual employment agreement makes no reference to either arbitration or a Form U–4.

In *Ward v. Intermountain Farmers Association,* 907 P.2d 264 (Utah 1995), the Utah Supreme Court discussed the analysis that courts must apply in determining whether a contract—in this case, the Form U–4—is ambiguous: "When determining whether a contract is ambiguous, any relevant evidence must be considered." *Id.* at 268. A court should "consider the writing in light of the surrounding circumstances." *Id.* "[I]f after considering such evidence, the court determines that the language of the contract is not ambiguous, then the parties' intentions must be determined solely from the language of the contract." *Id.* However, "'a contract provision is not necessarily ambiguous just because one party gives that provision a different meaning than another party does. To

demonstrate ambiguity, the contrary positions of the parties must each be tenable.'" *R & R Energies v. Mother Earth Indus.*, 936 P.2d 1068, 1074 (Utah 1997) (citation omitted). Finally, whether a contract is ambiguous remains "a threshold question of law, which we review for correctness." *Interwest Constr. v. Palmer*, 923 P.2d 1350, 1358–59 (Utah 1996).

Cade completed the Form U–4 in January 1989, approximately one month after executing an employment agreement with the Bank. On the Form, Cade listed Zions Discount as the firm through which he was registering and specifically indicated he would not "maintain multiple registrations with Broker Dealers under common ownership or control with the firm." The Bank appears only twice on the Form: in Item 19, which asks for Cade's employment and personal history, and Item 20, which asks whether Cade is "currently engaged in any other business (not shown above)."

There is no support on the Form U–4's face for the Bank's assertion that the parties intended the Form to govern this dispute. Zions Discount is the only entity, other than Cade and the NASD, identified on the Form U–4 as a party to the agreement. Furthermore, nothing in Cade's employment agreement itself refers to either arbitration or the need for Cade to complete a Form U–4. Under these circumstances, we do not find the Bank's assertions regarding intent "tenable." *See R & R Energies*, 936 P.2d at 1074. The Form U–4 is unambiguous in that it does not identify the Bank as a party which may enforce the arbitration provision.

### D. Did Cade Waive His Right to Challenge Arbitration?

■ In a last attempt to save the district court's arbitration orders, the Bank argues that even if there were in fact no arbitration agreement between Cade and the Bank, Cade waived his right to challenge the arbitration by (1) failing to appeal the trial court's Order Compelling Arbitration after that court stayed Cade's action and certified

its order as ripe for appeal; (2) executing a Submission to Arbitration agreement; and (3) expanding the number of claims before the arbitrators.

Utah courts have not yet addressed the legal standard that courts must apply to determine whether a party has waived its right to challenge an arbitration order or award. However, we cannot agree that Cade's decision to withhold further challenge until after the arbitration proceeding constituted a waiver of his right to do so.

Courts from other jurisdictions have repeatedly held that orders compelling arbitration and staying the underlying action are not final orders and thus are not immediately appealable. *See Wiepking v. Prudential–Bache Sec., Inc.*, 940 F.2d 996, 999 (6th Cir. 1991) ("Plaintiffs did not waive their right to appeal the district court's order simply because they did what the court ordered them to do."); *Jolley v. Paine Webber Jackson & Curtis, Inc.*, 867 F.2d 891, 892 (5th Cir.1989); *Pioneer Properties, Inc. v. Martin*, 776 F.2d 888, 890 (10th Cir.1985).

Such a conclusion is consistent with Utah's " 'long-standing public policy favoring speedy and inexpensive methods of adjudicating disputes.'" *Buzas Baseball v. Salt Lake Trappers*, 925 P.2d 941, 946 (Utah 1996) (citation omitted). "One hesitates to contemplate the avalanche of motions for discretionary review that would burden the courts if parties were required to seek this relief from clearly interlocutory orders or forfeit their right to appeal the matter when the litigation is concluded." *Wiepking*, 940 F.2d at 1000.

We thus hold that Cade did not waive his right to challenge the arbitration award by merely following the district court's order to submit to arbitration.[3]

### *Motion to Disqualify Davis and his Law Firm*

■ Cade argues that the trial court erred in denying his motion to disqualify Davis and Callister Nebeker & McCullough. We disagree.

---

**3.** This is not a case where a party voluntarily enters into arbitration and then, only after losing, challenges the award in an attempt to roll the dice again in a court proceeding. It was the Bank, after all, that forced Cade into arbitration.

In deciding a motion to disqualify for breach of confidentiality, courts have considered: (1) whether the disclosing party had "confidential or privileged information pertaining to [the movant's] trial preparation and strategy"; (2) whether the disclosing party disclosed that information to opposing counsel; and (3) whether, in light of such disclosure, opposing counsel's "continued representation ... threaten[s] to 'taint' all further proceedings in this case." *MMR/Wallace Power & Indus. v. Thames Assocs.*, 764 F.Supp. 712, 724 (D.Conn.1991); *accord Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 583 (D.N.J.1994). We will not overturn the trial court's decision absent an abuse of discretion. *See State v. Gray*, 851 P.2d 1217, 1227 (Utah Ct.App.1993).

Because the arbitration award had been issued before any allegedly inappropriate disclosures, and because the only step left in the process was either confirmation or vacation of the award by the trial court—which did not involve reconsideration of the merits of arbitration award—the district court felt Cade would not be damaged by a denial of his motion unless the arbitration award was vacated; the district court's order specifically allowed Cade to renew his motion should such a contingency arise. Because the district court had a reasonable basis for its order, it did not abuse its discretion. The district court may reconsider its decision if Cade again moves for an order of disqualification.

## CONCLUSION

We conclude that the district court erred in ruling that the arbitration provision in Cade's Form U-4 extended to this dispute. The Bank was not a party to the Form, nor did it enjoy the type of relationship with a signatory that might otherwise allow it to enforce the provision. Thus, we reverse the district court's arbitration orders and remand the case for trial.

We also conclude that the district court did not abuse its discretion by denying Cade's motion to disqualify where the court's order specifically allowed for renewal of the motion in the event the arbitration award was upset on appeal.

DAVIS, P.J., and WILKINS, Associate P.J., concur.