2008 UT App 209

James J. **KENNY**; Patricia D. **Kenny**; James E.B. **Stuart**; Eileen A. **Stuart**; Robert C. **Slettom**; Faye **Slettom**; Richard L. **Measelle**; Chase **Peterson**; Grethe B. **Peterson**; and **Thaynes Canyon 1 Homeowners Association**, an unincorporated association, Plaintiffs and Appellees,

v.

John L. **RICH**, Defendant and Appellant.

No. 20070391–CA.

Court of Appeals of Utah.

May 30, 2008.

---

Denver C. Snuffer Jr. and Bret W. Reich, Sandy, for Appellant.

Erik A. Olson and Thomas J. Burns, Salt Lake City, for Appellees.

Before GREENWOOD, P.J., BENCH and ORME, JJ.

## OPINION

BENCH, Judge:

¶ 1 Defendant John L. Rich appeals from a preliminary injunction issued against him and an award of attorney fees entered in favor of his homeowners association and the above-named Plaintiffs (collectively, the

HOA). Rich challenges the district court's (1) conclusion that he waived his right to arbitrate the dispute, (2) vacation of the arbitration award for lack of an agreement to arbitrate, (3) assertion of jurisdiction over him in light of problems with the HOA's service of process, (4) decision to proceed with a bench trial rather than a jury trial, (5) failure to require the HOA to post a bond at the time a temporary restraining order was issued against him, (6) conclusion that the HOA was entitled to attorney fees, and (7) calculation of the HOA's reasonable attorney fees. We affirm and remand for an award to the HOA of attorney fees it has reasonably incurred on appeal.

## BACKGROUND

¶2 Rich owns property that is part of the Thaynes Canyon Subdivision (the Subdivision) in Park City, Utah. Property in the Subdivision is subject to the conditions, covenants, and restrictions outlined in the Subdivision's Declaration of Protective Covenants (the Declaration). The Declaration contains a provision that requires a ten-foot setback from side and rear lot lines for any buildings and structures.

¶3 On July 19, 2005, Michael DeCarlo, Rich's architect and son-in-law, brought plans for an addition to Rich's home to James Stuart, a trustee of the HOA. These plans indicated that the addition to Rich's home would be 6.8 feet from Stuart's property line. Stuart objected to the plans on the basis that they violated the Declaration's provision that required all buildings to be set back ten feet from the lot line. The next day, Stuart gave DeCarlo a copy of the Declaration, and DeCarlo stated that he would not comply with the setback requirements contained therein.

¶4 Two days later, on July 21, 2005, the trustees of the HOA (the Trustees) held a meeting in which Stuart reported DeCarlo's intent to proceed with construction on Rich's home despite the apparent violation of the Declaration's setback provision. At the meeting, the Trustees determined that Rich's plans would violate the Declaration's setback provision and that a variance to or waiver of those requirements would not be granted. That same day, James Kenny, the president of the HOA, called Rich and left a voice message informing him of this determination and indicating that legal action would be taken if Rich did not halt the contemplated construction. Also that same day, Kenny called DeCarlo and informed him of the Trustees' determination regarding the setback. DeCarlo responded that he and Rich would not comply with the Declaration's ten-foot setback requirement because Park City required only a five-foot setback.

¶5 Subsequently, excavation began for the addition to Rich's home. Kenny again called Rich and advised him to cease construction because of the setback violations. Rich responded that he intended to proceed with construction.

¶6 On August 29, 2005, Kenny received a letter from DeCarlo requesting that the HOA undergo arbitration to resolve its dispute with Rich regarding the setback requirements. The next day, the HOA sent a letter to DeCarlo advising him that arbitration had been waived due to the untimely demand.[1] The HOA filed a complaint in district court, bringing claims for injunctive relief, declaratory relief, and breach of contract. The HOA also requested a temporary restraining order (the TRO).

¶7 On the day of the TRO hearing, Rich filed a motion to quash the summons and a motion to dismiss. In his motion to quash, Rich argued that service of process had been improper. In his motion to dismiss, Rich argued that the Declaration required that all disputes between the HOA and its members be resolved through arbitration. At the hearing, the HOA responded that Rich had waived his right to arbitration. To allow time for the HOA to file a written response, the court reserved ruling on Rich's motions. The court nonetheless granted the requested TRO and ordered the parties to submit to

---

1. The Declaration provided: "Any party desiring to arbitrate any controversy shall file written notice of his desire with the [HOA] ... within 30 days after he discovers, learns or has notice of such determination, decision or action ... taken under or pursuant to any provision of ... this Declaration."

arbitration. The court noted the arguments about Rich's waiver of the right to arbitration but decided that arbitration would be a practical and efficacious means to resolve the dispute. The TRO ordered Rich and his agents to refrain from construction in any manner that impinged on the ten-foot setback provision of the Declaration. The court did not require the HOA to post a bond in connection with the TRO.

¶ 8 While the parties prepared for arbitration, Rich proceeded with construction on the addition to his home. Rich's attorney signed the acknowledgment and confirmation provision at the end of the arbitrator's engagement letter (the Acknowledgment) but only "upon condition that this does not waive any right of [his] client; who objects to jurisdiction and sufficiency of service of process." Rich's counsel explained his conditions by writing, "There are pending motions to dismiss before the [c]ourt which are under advisement. My appearance does not subject my client to the [c]ourt's jurisdiction."

¶ 9 In response to Rich's actions following entry of the TRO, the HOA requested an order to show cause and moved that the scheduled arbitration be canceled until Rich removed the condition imposed by his attorney and his objections to jurisdiction. The district court signed the order to show cause and ordered the arbitration canceled "until further notice." Notwithstanding the district court's order canceling the arbitration, Rich and the arbitration panel proceeded with the arbitration hearing without the HOA's attendance or participation. The arbitration panel determined that it had jurisdiction to consider the claims arising under the case pending in the district court because Rich had not objected to the jurisdiction of the arbitration panel—just that of the court—and because the HOA and Rich had signed the Acknowledgment at the end of the en-

gagement letter sent by the arbitrators.[2] The arbitration panel reasoned that "although the arbitration was initially ordered by the [c]ourt, it ceased to be [c]ourt-ordered when the parties executed the [Acknowledgment]." Following the arbitration hearing, the arbitration panel ruled that Rich was entitled to a variance of the setback provision in the Declaration and issued an "Interim Award" in his favor. Rich filed in the district court a renewed motion to dismiss, citing the arbitration panel's resolution of the underlying dispute regarding the setback violations.

¶ 10 Subsequently, the district court denied Rich's motion to dismiss and vacated the arbitration award. The district court first noted that section 8.3 of the Declaration "clearly states ... that any party ... desiring to arbitrate any controversy shall file written notice of that desire with the [HOA] ... within 30 days of when he discovers or learns or has notice of such determination or action or decision of [the HOA]." The district court found that Rich "knew of the decision of the [HOA] Trustees [on] July 21, 2005," but his demand for arbitration—in the form of a letter from his architect, DeCarlo—was made "at the earliest [on] August 26, but probably [on] August 29, 2005."[3] The court determined that Rich "clearly knew more than 30 days before August 29, or August 26, 2005, that the [HOA] would not grant a variance or a waiver" with respect to his violation of the Declaration's setback provision. Thus, the district court held that "[Rich's] demand [for arbitration] was not timely and arbitration was waived under the Declaration."

¶ 11 In connection with its ruling on the motion to dismiss, the district court also concluded that the Acknowledgment signed by both the HOA and Rich did not constitute a

---

2. The Acknowledgment stated, "Counsel for the parties acknowledge and agree that the above referenced matter may be arbitrated in accordance with the Utah Revised Uniform Arbitration Act and accept the arbitration panel as on the terms and as provided for in this letter."

3. Rich's demand letter was dated August 26, 2005, but it was not received by Kenny until August 29, 2005. The district court also con-

cluded that Rich's hand-delivered letter did not comply with the requirements of the Utah Arbitration Act and stated, "Even if the demand for arbitration was timely, notice under Utah law of a desire to participate in arbitration must be in conformity with Utah law, [Utah Code section] 78–31a–110, or in other words, must be by certified or registered mail, and the nature of the dispute must be set forth."

separate agreement to arbitrate their dispute. The district court found that "arbitration was done because the court ordered it even though it is now clear it had been waived and was not properly demanded." Further, the court determined that "the 'agreement' to arbitrate [wa]s void because it [wa]s ambiguous and d[id] not amount to a meeting of the minds" in light of Rich's insertion of additional conditions. The court specifically found that the HOA had "signed the agreement ONLY BECAUSE the court ordered them to as part of the TRO process." The district court then vacated the arbitration panel's interim award because "the arbitration was not based on a valid agreement to arbitrate because that desire for arbitration had been waived by the untimely request for such arbitration."

¶ 12 After a subsequent evidentiary hearing, the district court considered Rich's motion to quash the summons, in which Rich asserted that despite the private process server's affidavit to the contrary, Rich had never been personally served and that the summons improperly stated that Rich must respond in twenty days, rather than thirty days. Here, the private process server filed the return of service and a subsequent affidavit certifying that he personally served a summons and complaint at Rich's residence in California on a woman who answered the door and appeared to be a resident. Rich presented evidence—affidavits from himself, his son, and his daughter—in an attempt to rebut the process server's proof of service and affidavit. In reviewing this evidence, the district court found "the facts surrounding the service of process to be as testified to by [the private process server] rather than as testified to by the family of [Rich]." Based on these factual findings, the district court concluded that service of process was proper as it was "served on a person of suitable age and discretion residing at the residence of defendant." The court also held that although the summons should have stated that Rich had thirty days in which to file an answer, that misinformation did not prevent Rich from receiving notice, nor did it cause him any prejudice.[4] Based on these

rulings, the court denied Rich's motion to quash.

¶ 13 Having resolved the issue of service of process, the district court granted the HOA's motion for a preliminary injunction, required the HOA to post a bond in connection with that injunction, and directed the parties to proceed to trial. Prior to trial, the HOA formally withdrew its claims for breach of contract and declaratory relief, but it continued to pursue its claim for injunctive relief and its request for attorney fees associated therewith. The district court examined the nature of the HOA's remaining claim for injunctive relief and Rich's defense—the HOA's abandonment of the setback requirements—and concluded that both were "purely equitable." The district court then determined that a jury was not required to hear these equitable claims. Furthermore, the district court concluded that Rich's claim of abandonment of the setback provision needed to be resolved before the other issues raised by Rich in his counterclaim—such as delay damages—could, or even needed to, be addressed.

¶ 14 Following the bench trial, the district court granted a permanent injunction and issued a memorandum decision indicating that the HOA, as the prevailing party, was entitled to attorney fees under the Declaration. The HOA submitted an affidavit for fees and costs, which showed attorney fees amounting to $145,489.00 and costs amounting to $16,170.66. Along with the affidavit, the HOA included billing records of the HOA's law firm showing the breakdown of the attorney fees. Later on, the HOA filed a supplement that included a breakdown of the costs.

¶ 15 Rich challenged the district court's award of attorney fees on two grounds. First, Rich argued that the Declaration limited liability for attorney fees to instances where the HOA members pursued claims in bad faith or with actual malice. Second, Rich contended that the affidavit submitted by the HOA's counsel was deficient under rule 73 of

---

4. Prior to its definitive ruling on this issue, the district court stated that it would allow thirty days for filing an answer if the case was not resolved through Rich's motion to dismiss.

the Utah Rules of Civil Procedure and that the amount of fees was unreasonable.

¶ 16 The district court rejected Rich's reading of the Declaration and determined that the affidavit submitted by the HOA was generally sufficient. The district court specifically found that the rates charged by the HOA's attorneys were reasonable; however, it awarded less than the amount requested because certain individual entries of fees either lacked information regarding the work that was completed, appeared to be duplicative of another attorney's work, or appeared to be excessive for the work described as having been performed. The court then reduced the fees associated with those entries by specific amounts, for a total reduction of $25,950.00.

¶ 17 Rich now appeals virtually every ruling and order of the district court associated with this dispute.

## ISSUES AND STANDARDS OF REVIEW

¶ 18 Rich raises five major issues on appeal. First, Rich claims that the district court abused its discretion in finding that he waived his right to arbitration under the Declaration. "Whether a party has effectuated a waiver is a mixed question of law and fact." *United Park City Mines Co. v. Stichting Mayflower Mountain Fonds,* 2006 UT 35, ¶ 21, 140 P.3d 1200. " '[W]hether the trial court employed the proper standard of waiver presents a legal question which is reviewed for correctness, but the actions or events allegedly supporting waiver are factual in nature and should be reviewed as factual determinations.' " *Id.* (alteration in original) (quoting *Pledger v. Gillespie,* 1999 UT 54, ¶ 16, 982 P.2d 572). Thus, "we 'grant broadened discretion to the trial court's findings' when reviewing questions of waiver." *Id.* (quoting *Chen v. Stewart,* 2004 UT 82, ¶ 23, 100 P.3d 1177).

¶ 19 In connection with this first issue, Rich also claims that the district court erred in vacating the arbitration award because the HOA entered into a separate agreement to arbitrate the dispute when it signed the Acknowledgment. "In reviewing the order of a trial court confirming, vacat-ing or modifying an arbitration award, we grant no deference to the district court's conclusions [of law] but review them for correctness, and we review the district court's factual findings under a clearly erroneous standard." *Cade v. Zions First Nat'l Bank,* 956 P.2d 1073, 1076 (Utah Ct.App.1998) (alteration in original) (internal quotation marks omitted). "Whether or not [an][a]greement constitutes an arbitration agreement is a question of law which we review for correctness, according no particular deference to the conclusions reached by the trial court." *Reed v. Davis County Sch. Dist.,* 892 P.2d 1063, 1064 (Utah Ct.App. 1995). Furthermore, "[w]hether a party waives his or her right to challenge an arbitration award by submitting to arbitration after being ordered to do so [by the court] is a legal question which we review for correctness." *Cade,* 956 P.2d at 1076.

¶ 20 Second, Rich claims that the district court clearly erred in finding that service of process was proper and in asserting jurisdiction over him. "Whether service of process is proper presents a question of law that we review for correctness." *Stichting Mayflower Mountain Fonds v. Jordanelle Special Serv. Dist.,* 2001 UT App 257, ¶ 7, 47 P.3d 86. However, whether papers were served presents a question of fact, and "[w]e will overturn the trial court's findings of fact only if they are 'against the clear weight of the evidence or if [we] otherwise reach[ ] a definite and firm conviction that a mistake has been made.' " *Cooke v. Cooke,* 2001 UT App 110, ¶ 7, 22 P.3d 1249 (second and third alterations in original) (quoting *State v. Walker,* 743 P.2d 191, 193 (Utah 1987)).

¶ 21 Third, Rich asserts that the district court erred in concluding that the case did not need to be tried to a jury. Whether there is a right to a jury trial is a question of law that we review for correctness. *Cf. Goldberg v. Jay Timmons & Assocs.,* 896 P.2d 1241, 1242 (Utah Ct.App.1995) ("[W]hether the trial court erred in designating the jury's verdict as advisory .... is a question of law, hinging on an interpretation of Utah Rule of Civil Procedure 39(c); thus, we review the trial court's procedural choice for correctness."). However, " '[i]t is the

prerogative of the judge who actually tries the case to make the determination'" of whether an issue is "'one in equity or one in law wherein the party can insist on a jury as a matter of right.'" *Corbet v. Cox*, 30 Utah 2d 361, 517 P.2d 1318, 1320 (1974) (quoting *Sweeney v. Happy Valley*, 18 Utah 2d 113, 417 P.2d 126, 128–29 (1966)). Thus, "'[u]nless it is shown that the ruling [determining the equitable or legal nature of the issue] was patently in error or an abuse of discretion, this court will not interfere with the ruling thereon.'" *Id.* (quoting *Sweeney*, 417 P.2d at 129).

¶ 22 Fourth, Rich contends that the district court abused its discretion in failing to require the HOA to post a bond at the time the TRO was issued. We review a district court's decision regarding the necessity of posting a bond for a temporary restraining order for abuse of discretion. *See Corporation of the President of the Church of Jesus Christ of Latter-Day Saints v. Wallace*, 573 P.2d 1285, 1287 (Utah 1978) ("[T]he trial judge has wide discretion in the matter of requiring security [for a temporary restraining order]....").

¶ 23 Fifth, Rich claims that the district court erred in concluding that the Declaration did not limit Rich's liability for attorney fees and that, even if he was liable for attorney fees, the HOA's affidavit of fees was insufficient and the district court abused its discretion when calculating reasonable attorney fees in this case. "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *Valcarce v. Fitzgerald*, 961 P.2d 305, 315 (Utah 1998). However, "[c]alculation of reasonable attorney fees is in the sound discretion of the trial court ... and will not be overturned in the absence of a showing of a clear abuse of discretion." *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988); *accord Valcarce*, 961 P.2d at 316.

## ANALYSIS

### I. Right to Arbitration

#### A. Waiver

¶ 24 Rich claims that the district court erred in concluding that he waived his right to request arbitration of his dispute with the HOA by failing to demand arbitration within the thirty-day time period mandated by the Declaration. Where a party is contractually bound to follow certain procedures and timelines in order to invoke specified contractual rights, and the party fails to do so, the party waives his or her rights. *See Brinton v. IHC Hosps., Inc.*, 973 P.2d 956, 966 (Utah 1998) ("[T]he trial court correctly required [the party] to timely assert each objection to purported ... violations of the [contract], in compliance with his contractually assumed duty, or relinquish them[ as waived].."); *see also DCM Inv. Corp. v. Pinecrest Inv. Co.*, 2001 UT 91, ¶ 9, 34 P.3d 785 ("[Defendant]'s failure to choose either option [as required by the contract] resulted in waiver of its contractual right to select an option."); *American Rural Cellular v. Systems Commc'n Corp.*, 939 P.2d 185, 193 (Utah Ct.App.1997) (noting that an arbitration provision in a contract did not apply "because both parties failed to comply with the 'binding arbitration' requirement of the contract .... [and][t]herefore the parties [we]re deemed to have waived this provision").

¶ 25 Here, the district court held that the contract between Rich and the HOA required Rich to make a demand for arbitration within thirty days of receiving notice of the HOA's determination both that his proposed addition would violate the HOA's setback requirements and that he would not be granted a variance or waiver of those requirements. The district court then found that Rich had notice of the HOA's determination not to grant him a variance or waiver of the setback provision on July 21, 2005, and that Rich made his demand for arbitration on August 26, 2005, at the earliest, which was thirty-six days after he received notice. Rich does not dispute the Declaration's thirty-day requirement for demanding arbitration. Rather, he claims that the district court erred in finding he had notice on July 21, 2005, because the HOA informed him of its determination through a phone message that he claims he did not receive until he returned home from vacation at a later date.

¶ 26 Although Rich points to his own testimony regarding his notice, he overlooks the fact that the district court also found that Rich's architect and son-in-law, DeCarlo, learned of the HOA's determination on July 21, 2005, and had been provided a copy of the Declaration the day before. It is well established that

> a principal is affected with constructive knowledge, regardless of his actual knowledge, of *all material facts* of which his agent receives notice or acquires knowledge while acting in the course of his employment and within the scope of his authority, although the agent does not in fact inform his principal thereof.

3 C.J.S. *Agency* § 432 (1973), *quoted with approval in Wardley Better Homes & Gardens v. Cannon*, 2002 UT 99, ¶ 16, 61 P.3d 1009. Rich does not challenge the district court's findings with regard to his architect's notice and knowledge. For this reason, we conclude that the district court did not clearly err in finding that Rich had notice on July 21, 2005, of the HOA's determination and that he made his demand for arbitration after the Declaration's thirty-day deadline.

B. The Acknowledgment

¶ 27 Rich also claims that, regardless of the Declaration, he and the HOA entered into a second agreement to arbitrate their dispute when they signed the Acknowledgment following the court's order of arbitration. He contends that the arbitration ceased to be court-ordered the moment the parties signed the Acknowledgment, that the HOA therefore lost its ability to challenge the arbitration award on the basis that no arbitration agreement existed, and that the district court erred in vacating the award on that basis. A "district court may vacate [an arbitration] award if 'there was no agreement to arbitrate,' as long as the party objected before participating in the arbitration proceeding." *Powell v. Cannon*, 2008 UT 19, ¶ 19, 179 P.3d 799 (quoting Utah Code Ann. § 78-31a-124(1)(e) (2002)). This is because "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Cade v. Zions First Nat'l Bank*, 956 P.2d 1073, 1076–77 (Utah Ct.App.

1998) (citation and internal quotation marks omitted). As a result, "[w]e must first conclude that arbitration is a remedy which has been bargained for by the parties." *Id.* at 1077 (internal quotation marks omitted). Additionally, the court—and not the arbitration panel—is to "decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." Utah Code Ann. § 78-31a-107(2) (2002).

¶ 28 In determining whether an agreement to arbitrate exists, it must be remembered that "policies supporting liberal enforcement of arbitration agreements inhere only once the arbitration agreement is established." *Jenkins v. Percival*, 962 P.2d 796, 800 (Utah 1998). Thus, "[o]nly when such [an] agreement on arbitration exists may we encourage arbitration by liberal interpretation of the arbitration provisions themselves." *Cade*, 956 P.2d at 1077. In other words, the presumption in favor of arbitration does not create a presumption in favor of finding that an agreement to arbitrate actually exists. *See id.* at 1077 ("[A]lthough there is a presumption in favor of arbitration, a party will not be required to arbitrate when it has not agreed to do so." (citations and internal quotation marks omitted)).

¶ 29 Here, the Acknowledgment was signed because of a court order mandating arbitration, much as in *Cade v. Zions First National Bank*, 956 P.2d 1073 (Utah Ct.App. 1998). In *Cade*, a bank employee brought suit against the bank following his termination. *See id.* at 1075. The bank filed a motion to compel arbitration, arguing that a particular document signed by the employee constituted an agreement to arbitrate any such dispute. *See id.* The trial court granted the bank's motion and the employee subsequently executed a "Uniform Submission Agreement for NASD Arbitration." *Id.* Following the arbitration proceeding, the employee challenged the arbitration award and renewed his argument that no arbitration agreement existed between himself and the bank. *See id.* at 1076. The bank argued that the employee had waived his right to challenge the arbitration award and the existence of an arbitration agreement by, among

other things, executing the Uniform Submission Agreement for NASD Arbitration. *See id.* at 1080. This court ruled against the bank. *See id.* at 1081.

¶ 30 In reaching its decision in *Cade,* this court noted that "[t]his [wa]s not a case where a party voluntarily enters into arbitration and then, only after losing, challenges the award in an attempt to roll the dice in a court proceeding." *Id.* at 1080 n. 3. Rather, this court observed that the party was "forced . . . into arbitration" by virtue of the opposing party's motion to compel arbitration and the trial court's order granting that motion. *Id.* Thus, this court held "that [the employee] did not waive his right to challenge the arbitration award by merely following the district court's order to submit to arbitration." *Id.* at 1080.

¶ 31 The Acknowledgment that Rich claims constitutes a separate and distinct agreement to arbitrate was nothing more than an arbitration engagement letter, akin to the submission agreement in *Cade.* The letter set forth the persons serving on the arbitration panel, the fees charged by each arbitrator, the rules that would govern the arbitration proceeding, the date and length of the arbitration hearing, and the date of a prehearing conference. Although the arbitrator who sent the letter requested that "counsel for the parties . . . confirm and acknowledge by signing this letter that they have agreed to arbitrate all issues arising under [the case] pending in the [district court]," the district court specifically found that the HOA's counsel had signed that letter "ONLY BECAUSE" the HOA was forced into arbitration by virtue of the court's order, not because the HOA had any intent to enter into a separate arbitration agreement. In addition, the district court found that the unilateral imposition of additional conditions in the Acknowledgment by Rich's counsel precluded any sort of meeting of the minds with respect to the purpose of the Acknowledgment and thereby precluded the actual formation of an agreement.

¶ 32 We conclude that the Acknowledgment did not constitute a separate and distinct agreement to arbitrate the dispute between Rich and the HOA. Given Rich's waiver of arbitration under the Declaration and the lack of a separate agreement to arbitrate, the district court did not err by vacating the arbitration award on the ground that there was no agreement to arbitrate.

## II. Jurisdiction, Service of Process, and Summons

 ¶ 33 Rich claims that the district court lacked jurisdiction over him because he was never personally served, despite the private process server's "Proof of Service" and affidavit to the contrary. A private process server's "return of service certifying that [a defendant] was personally served is presumptively correct and can be disproved only by clear and convincing evidence." *Cooke v. Cooke,* 2001 UT App 110, ¶ 9, 22 P.3d 1249; *see also Classic Cabinets, Inc. v. All Am. Life Ins. Co.,* 1999 UT App 88, ¶ 13, 978 P.2d 465 ("Because . . . we presume the correctness of the constable's Affidavit of Service, the burden then shifts to [the defendant] to prove, by clear and convincing evidence, that service was improper."). Here, the private process server filed the return of service and a subsequent affidavit certifying that he personally served a summons and complaint at Rich's residence in California on a woman who answered the door and appeared to be a resident. Rich presented affidavits from himself, his son, and his daughter. However, these self-serving affidavits do not amount to clear and convincing evidence sufficient to disprove the presumption in favor of the process server's return of service.

 ¶ 34 Rich also claims that the summons he received was fatally defective because it allowed him only twenty days to respond, instead of the thirty days that should be afforded to a nonresident. In *Meyers v. Interwest Corp.,* 632 P.2d 879 (Utah 1981), the Utah Supreme Court considered whether a Utah court lacked jurisdiction over a nonresident defendant where the summons issued to the defendant "stated that the defendant had twenty days within which to file an answer." *Id.* at 880. The supreme court ruled that "[a]lthough the summons may have been defective, the defect was inconsequential." *Id.* at 881. The supreme court noted that "the defendant was

properly served with a summons and was put on notice that it was being sued and would have to take action to defend itself." *Id.* at 880–81. Furthermore, there was no showing that the defendant was prejudiced by the summons's statement because there was "no showing that defendant relied to its detriment on the twenty-day period stated in the summons; nor [did] it seem possible that the defendant could have been harmed by reliance on that statement." *Id.* at 881. The supreme court concluded that the defect in the summons did not "interdict[ ] the exercise of all power by the court to act in [the] matter" but, rather, the court retained "jurisdiction to permit an amendment of the summons," *id.,* and such amendment "relates back to the initial summons," *id.*

¶ 35 In this case, Rich has not shown how the mistake precluded actual notice of the HOA's action against him or otherwise prejudiced him. When ruling on Rich's motion to quash the summons, the district court stated that it would give Rich a full thirty days to answer the complaint. The HOA subsequently served Rich with another summons that properly stated the time frame for his response. We therefore conclude that the district court did not err in concluding that the defect in the summons was inconsequential and that it did not deprive the court of jurisdiction.

¶ 36 Finally, Rich makes a general claim that there was no basis for asserting personal jurisdiction over him or that it was erroneous for the district court to enter a TRO without first affirmatively deciding whether it had jurisdiction over him. Rich does not cite any cases regarding personal jurisdiction, nor does he conduct any analysis with respect to Utah's long-arm statute or his minimum contacts with the state. "It is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief." *Valcarce v. Fitzgerald,* 961 P.2d 305, 313 (Utah 1998). Even if Rich had adequately briefed this particular issue, the success of his argument is doubtful given that Rich owned property in Utah and the action arose directly from his use of it. *See Rhoades v. Wright,* 622 P.2d 343, 346 (Utah 1980) ("We consider the pres-

ence of defendants' land—decidedly tangible and immovable—together with the use of the land to be sufficient contacts by defendants with this State to support the exercise of jurisdiction."). Documents submitted along with the HOA's request for a TRO showed that Rich had availed himself of Utah's laws and was pursuing additional use of his Utah property by submitting building applications and receiving building permits. Thus, the district court properly assumed it had jurisdiction to issue the TRO based on a prima facie showing of jurisdiction made by the HOA through documentary evidence attached to the HOA's TRO request. *See Neways, Inc. v. McCausland,* 950 P.2d 420, 422 (Utah 1997) (stating that a court "may determine jurisdiction .... on documentary evidence alone ..., [and] *the plaintiff is only required to make a prima facie showing of personal jurisdiction*" at that point (internal quotation marks omitted)).

### III. Right to a Jury Trial

¶ 37 Rich claims that the district court erred by striking the jury and proceeding with a bench trial on the HOA's claim for injunctive relief and Rich's defense of abandonment. The "constitutional right to a jury trial in civil cases extends only to cases that would have been cognizable at law at the time the constitution was adopted." *Zions First Nat'l Bank v. Rocky Mountain Irrigation, Inc.,* 795 P.2d 658, 661 (Utah 1990); *see also* Utah R. Civ. P. 39(a)(2) ("The trial of all issues so demanded shall be by jury, unless ... [t]he court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist."). A trial court has discretion to determine whether an issue is one in equity or one in law. *See Corbet v. Cox,* 30 Utah 2d 361, 517 P.2d 1318, 1320 (1974) ("In circumstances where doubt exists as to whether the cause should be regarded as one in equity, or one in law wherein the party can insist on a jury as a matter of right, the trial court should have some latitude of discretion." (internal quotation marks omitted)). Once an issue is determined to be equitable as opposed to legal, "the equitable issue raised should first be disposed of as in a court of equity, and then if an issue at law remains, it is triable to

a jury." *Liberty Oil Co. v. Condon Nat'l Bank,* 260 U.S. 235, 242, 43 S.Ct. 118, 67 L.Ed. 232 (1922). Only where "legal and equitable issues turn on the same operative facts, [must] a jury ... decide the legal issue first." *Zions First Nat'l Bank,* 795 P.2d at 661.

¶ 38 The district court did not abuse its discretion in determining that the HOA's claim for injunctive relief was an equitable claim that could be heard without a jury. *See Goldberg v. Jay Timmons & Assocs.,* 896 P.2d 1241, 1242 (Utah Ct.App.1995) ("A request for injunctive relief for violation of [a subdivision's Declaration of Covenants, Conditions, and Restriction's] is brought in equity."). Rich's legal issues—such as delay damages—did not turn on the same operative facts as the claims for injunctive relief and abandonment. The district court therefore did not err in determining that the equitable issue of injunctive relief and the equitable defense of abandonment should be heard first without a jury. Because the HOA's success on its request for injunctive relief rendered Rich's legal claims moot, the district court properly dispensed with a jury trial on those claims.

## IV. Requirement of a Bond

¶ 39 Rich claims that the district court abused its discretion by not requiring a bond prior to issuing the TRO. Rule 65A of the Utah Rules of Civil Procedure states that "[t]he court shall condition issuance of the [TRO] ... on the giving of security by the applicant ... unless it appears that none of the parties will incur or suffer costs, attorney fees or damage as the result of any wrongful order." Utah R. Civ. P. 65A(c)(1). "[I]f there is an absence of proof showing a likelihood of harm, certainly no bond is necessary." *Corporation of the President of the Church of Jesus Christ of Latter-Day Saints v. Wallace,* 573 P.2d 1285, 1287 (Utah 1978).

¶ 40 Here, the district court found that there was not a likelihood of harm in the event of a wrongfully issued TRO because when it was issued, construction on the home was at the very beginning phase and the court was essentially dealing with "a hole in the ground." The court ordered expedited arbitration to reduce the time that the TRO would be in place. Furthermore, once a preliminary injunction was issued, the court required a bond and the HOA posted the same. The court, therefore, acted within its discretion by not requiring a bond on the TRO.

## V. Attorney Fees

¶ 41 Rich claims that the district court erred by awarding attorney fees to the HOA because the Declaration limits his liability for the HOA's attorney fees to circumstances where Rich acted in bad faith or with malice. He also asserts that the district court erred by awarding attorney fees to the HOA because the HOA's affidavit of fees and costs failed to comply with rule 73 of the Utah Rules of Civil Procedure and that the district court abused its discretion in calculating the reasonable amount of fees.

### A. Contractual Basis for Attorney Fees

¶ 42 "In general, attorney fees may be awarded to the prevailing party only if allowed by statute or contract." *American Rural Cellular v. Systems Commc'n Corp.,* 939 P.2d 185, 192 (Utah Ct.App.1997). "If provided for by contract, attorney fees are awarded in accordance with the terms of that contract." *Id.* (internal quotation marks omitted). "When interpreting a contract, 'we look to the writing itself to ascertain the parties' intentions, and we consider each contract provision ... in relation to all of the others, with a view toward giving effect to all and ignoring none.'" *Green River Canal Co. v. Thayn,* 2003 UT 50, ¶ 17, 84 P.3d 1134 (omission in original) (quoting *WebBank v. American Gen. Annuity Serv. Corp.,* 2002 UT 88, ¶ 18, 54 P.3d 1139). "'If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language....'" *Id.* (quoting *WebBank,* 2002 UT 88, ¶ 19, 54 P.3d 1139).

¶ 43 The contract at issue in this case, the Declaration, contains an attorney fees provision in section 7, which is entitled "Enforcement." Section 7.1 allows the HOA or "an owner of a Lot" to bring an enforce-

ment action, and it provides that the prevailing party in that enforcement action is "entitled to recover its costs and expenses in connection therewith, including reasonable attorney[ ] fees." Section 7.3 of the Declaration, however, provides for a limitation on liability:

> Neither Declarant, the Association, the Board of Trustees of the Association, the Architectural Committee nor any member, agent or employee of any of the same shall be liable to any party for any action or for failure to act with respect to any matter if the action taken or failure to act was in good faith and without malice.

¶ 44 Rich claims that because he is a member of the HOA, he is covered by this limited liability provision and cannot be required to pay the HOA's attorney fees because his actions were conducted in good faith. The HOA asserts that the "member" referenced in section 7.3 is a member of the Architectural Committee and not a general member of the HOA. Thus, the HOA asserts that section 7.3 does not limit the liability of members of the HOA.

¶ 45 We agree with the HOA and the district court that Rich's interpretation of the contract fails. When the language of the Declaration is read as a whole, the language of section 7.3 does not limit the liability of members of the HOA who defend a successful enforcement action brought by the HOA. Nothing in the language of section 7.1 indicates that it is limited or modified by other provisions within the Declaration, including Section 7.3. To the extent section 7.3 could be viewed as bearing on attorney fees,[5] its reference to "any member, agent, or employee" is consistent with the Declaration's use of that phrase to refer to members of the Architectural Committee, but it is not consistent with its reference to individual members of the HOA—who otherwise are consistently referred to as "Members of the Association," "Members," or, as in section 7.1, "owner[s]." Thus, the district court did not err in concluding that the HOA was entitled to attor-

ney fees under the Declaration and that Rich's liability for such was not limited.

**B. Calculation of Reasonable Attorney Fees and Costs**

■ ¶ 46 Rule 73 of the Utah Rules of Civil Procedure requires that a request for attorney fees "be supported by affidavit." Utah R. Civ. P. 73(a). This rule also requires the affidavit to set forth "the basis for the award; a reasonably detailed description of the time spent and work performed, including for each item of work the name, position … and hourly rate of the persons who performed the work; … [and] factors showing the reasonableness of the fees." Utah R. Civ. P. 73(b)(1)-(3). "The reasonableness of an award of attorney fees is highly individualized and decided 'according to the factually varied context of each particular case.'" *Amyx v. Columbia House Holdings, Inc.,* 2005 UT App 118, ¶ 6, 110 P.3d 176 (quoting *Foote v. Clark,* 962 P.2d 52, 56–57 (Utah 1998)).

■ ¶ 47 The district court properly found that the affidavit submitted by the HOA's counsel satisfied the requirements of rule 73 of the Utah Rules of Civil Procedure. While only one attorney from the firm submitted an affidavit, the affiant stated that he was operating from personal knowledge and he included the firm's billing records with his affidavit. The entries in the billing records stated the work performed, the person performing the work, and the hourly rate charged by the person performing the work. While the billing records did not state the amount of time expended by each person on a given entry, those figures are easily calculated by dividing the total fee by the hourly rate charged.

¶ 48 In considering the reasonableness of the amount of fees, the court explicitly considered the factors established in *Dixie State Bank v. Bracken,* 764 P.2d 985, 989–90 (Utah 1988) (outlining several factors that trial courts should consider in awarding attorney fees). The district court found that the billing rates charged were reasonable for the

---

**5.** We do not comment on whether, if Rich were entitled to recover attorney fees as the prevailing party below, the reciprocity mandate of Utah

Code section 78–27–56.5 would allow the HOA to assert Section 7.3 as a bar to his recovery of fees. *See* Utah Code Ann. § 78–27–56.5 (2002).

local area. The district court also found the fees to be reasonable because Rich was "responsible for the bulk of [the] litigation." Where the court found the reported time expended for a particular task to be unreasonable—either because the total amount of the fee was excessive, redundant, or inadequately explained—the court made a specific reduction in the amount charged for that specific task. Thus, the court did not abuse its discretion in determining the reasonableness of the fees requested.

## VI. Attorney Fees on Appeal

¶ 49 The HOA requests its attorney fees on appeal. "[W]hen a party who received attorney fees below prevails on appeal, 'the party is also entitled to fees reasonably incurred on appeal.'" *Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) (quoting *Utah Dep't of Soc. Servs. v. Adams*, 806 P.2d 1193, 1197 (Utah Ct.App.1991)). We therefore grant the HOA its attorney fees reasonably incurred on appeal.

## CONCLUSION

¶ 50 We conclude that the district court did not abuse its discretion in determining that Rich's untimely demand for arbitration constituted a waiver of his right to arbitrate his dispute with the HOA. Given that the Acknowledgment did not constitute a separate agreement to arbitrate, the district court did not err in vacating the arbitration award. The district court properly asserted jurisdiction over Rich and did not clearly err in determining that service of process had been effected on Rich or that the defect in the summons was inconsequential. Because the remaining claim at the time of trial was equitable, the district court properly proceeded with a bench trial. The court did not err by not requiring the HOA to post a bond at the time the TRO was issued against Rich because there was no showing of harm. In light of the plain language of the Declaration, the district court did not err in concluding that the HOA, as the prevailing party, was entitled to attorney fees and that Rich was not entitled to a limitation of liability for such. Finally, the affidavit submitted by the HOA for attorney fees was sufficient and the district court did not abuse its discretion in calculating reasonable attorney fees in this case.

¶ 51 We therefore affirm. The case is remanded to the district court for an award to the HOA of attorney fees it has reasonably incurred on appeal.

¶ 52 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and GREGORY K. ORME, Judge.