**2013 UT App 28**

# THE UTAH COURT OF APPEALS

MARIPOSA EXPRESS, INC.; COLD SPRING INVESTMENTS, LLC;
COLD SPRING INVESTMENTS NO. 1, LP; COLD SPRING INVESTMENTS
NO. 2, LP; NEWBURYPORT CAPITAL, LLC; HANNAH ENTERPRISES,
INC.; USS HOLDINGS, LLC; USS COLUMBIA, LLC; METRO MAR
VENTURES LLC; MICHAEL JONES, LLC; STIRLING LLC;
MICHAELSON VENTURES INC.; USS O'BRIEN, INC.; USS HIGHLAND
PARK, INC.; SHARON MCWILLIAMS; GEORGE AMMIRATO; WILLIAM
DEMET; ROBERT HARRIS; MICHAEL JONES; TED MICHAELSON; JIM
O'BRIEN; AND STEFAN TRIANDAFILOU,

*Plaintiffs and Appellants,*

*v.*

UNITED SHIPPING SOLUTIONS, LLC; USS LOGISTICS, LLC;
ROBERT ROSS; CHARLES DERR; AND JESSE MOORE,

*Defendants and Appellees.*

Opinion
No. 20110829-CA
Filed January 31, 2013

Third District, Salt Lake Department
The Honorable William W. Barrett
No. 110915908

Karthik Nadesan and Ivan W. Lependu,
Attorneys for Appellants

David J. Jordan, Cameron L. Sabin, and Joseph W. Loosle,
Attorneys for Appellees

JUDGE GREGORY K. ORME authored this Opinion,
in which JUDGE MICHELE M. CHRISTIANSEN concurred.
JUDGE CAROLYN B. MCHUGH concurred in the result.

ORME, Judge:

¶1    While many of the plaintiffs (collectively, the Mariposa franchisees) have now settled, the remaining plaintiffs appeal from a district court order dismissing their complaint and compelling them to participate in arbitration with United Shipping Solutions, LLC (USS). We affirm the district court's basic ruling but remand to the district court for further proceedings.


BACKGROUND

¶2    USS operates a franchising system in which franchisees resell small parcel shipping services. USS and its affiliate USS Logistics, LLC (USSL) (collectively, the USS parties) arranged for shipping services primarily from DHL Express USA, Inc. (DHL). DHL provided its services to the USS franchise system under a reseller agreement, which required that each of the Mariposa franchisees pay USS for DHL's services and then USS would provide an aggregate payment to DHL.

¶3    On November 10, 2008, DHL announced that it was discontinuing its express and ground domestic shipping services effective January 30, 2009—a breach of the reseller agreement. The non-compete provisions of the franchise agreements apparently foreclosed the Mariposa franchisees from contracting with other providers for replacement services or products. Following DHL's breach of the reseller agreement, the Mariposa franchisees stopped paying USS for the DHL services still being utilized by their customers. As a result, USS terminated the franchises of the Mariposa franchisees.

¶4    On December 3, 2008, the Mariposa franchisees brought suit against the USS parties in Utah state court (the Mariposa lawsuit), seeking to avoid all obligations under their franchise agreements. The USS parties counterclaimed, seeking enforcement of the franchise obligations and payment for the freight and DHL

shipments provided to the Mariposa franchisees and their customers through the USS franchise system. A couple of weeks after the suit was filed, the district court entered a temporary restraining order that required, inter alia, (1) that the Mariposa franchisees stop soliciting employees of the USS parties; (2) that the Mariposa franchisees not use or disclose any of the USS parties' confidential or proprietary information in any way; and (3) that the Mariposa franchisees discontinue all use of the USS parties' trademarks and any claimed association with the USS franchise system.

¶5 Later that same month, USSL—and through a later amended complaint, USS and some of its franchisees—filed suit against DHL in Utah state court (the DHL lawsuit). The DHL lawsuit alleged, inter alia, that DHL breached the reseller agreement and thereby caused significant damages to the USS franchise system. DHL counterclaimed, asserting that USSL was liable for the unpaid shipping services received by the Mariposa franchisees. The Mariposa franchisees also filed their own lawsuit against DHL in New York (the franchisee lawsuit) in March 2009, claiming that DHL was liable to the Mariposa franchisees for DHL's breach of the reseller agreement.

¶6 In June 2009, the district court in the Mariposa lawsuit—having been provided evidence indicating that certain Mariposa franchisees had violated the temporary restraining order—entered an order enjoining the Mariposa franchisees "from using or charging shipments to USS's accounts with its shipping providers." The court scheduled an evidentiary hearing to determine whether those Mariposa franchisees should be held in contempt.

¶7 The district court held the evidentiary hearing in September 2009 and ruled that those Mariposa franchisees had violated the temporary restraining order. After granting the USS parties' motion for contempt, the district court took the question of appropriate sanctions under advisement and proceeded with a

multi-day evidentiary hearing on the parties' cross-motions for a preliminary injunction. Near the end of that hearing, the Mariposa franchisees approached the USS parties about settling the Mariposa lawsuit.

¶8    Two weeks later, the USS parties and the Mariposa franchisees settled the Mariposa lawsuit by entering into a settlement agreement in which the Mariposa franchisees agreed, inter alia, to make three types of payments to the USS parties. The Mariposa franchisees agreed (1) to pay the USS parties a settlement payment, (2) to pay USS for all amounts owed for unpaid freight shipments, and (3) to indemnify the USS parties against any amounts that the USS parties were determined to owe DHL for shipping services provided to the Mariposa franchisees or their customers, regardless of whether the determination was made through adjudication or settlement of the DHL lawsuit. All other issues between the Mariposa franchisees and the USS parties were resolved, and the Mariposa lawsuit was dismissed.

¶9    As part of the settlement agreement, the USS parties and the Mariposa franchisees agreed that the USS parties would provide the Mariposa franchisees with access to certain shipping data, consistently referred to by the parties in the course of their dealing as the CAMS data, as a means to determine the outstanding amount owed for freight services. After the CAMS data was disclosed, the Mariposa franchisees were to be given time to review the data and indicate whether they disputed the amounts owed, in accordance with procedures and deadlines set forth in the settlement agreement. If there was a dispute regarding the amounts due for freight, the parties agreed to resolve it through binding arbitration. Paragraph 3 of the settlement agreement provides:

> [T]he respective Mariposa Franchisees agree to indemnify and hold USS harmless for any and all amounts the USS Parties are determined to owe DHL through judgment or settlement for DHL services provided to the respective Mariposa Franchisees

and/or their customers and which the respective Mariposa Franchisees or their customers have not already paid to USS or DHL (regardless of whether that determination is by judgment or through settlement, and regardless of whether the amount is determined through set-off amounts that may reduce any judgment in favor of the USS Parties and against DHL). The respective Mariposa Franchisees further agree to pay to USS all royalties, Wasatch Billing fees, and late fees charged by DHL resulting from non-payment by the respective Mariposa Franchisees, on the shipments the USS Parties are determined to owe to DHL.

The parties agreed that the USS parties would "provide the Mariposa Franchisees with access to the CAMS Data . . . necessary to show the DHL services provided to the Mariposa Franchisees and/or their customers." The agreement further states:

If the Mariposa Franchisees do not agree with the amount identified by the USS Parties, the USS Parties shall nevertheless have the right to proceed with the settlement and any dispute between the USS Parties and the Mariposa Franchisees concerning these amounts shall be resolved in accordance with the dispute resolution procedure set forth in Paragraph 1.c above. Likewise, if the USS Parties are determined to owe DHL, through a judgment, any amount for services provided to the Mariposa Franchisees and/or their customers, any dispute between the USS Parties and the Mariposa Franchisees concerning such amounts shall be resolve[d] in accordance with the dispute resolution procedure set forth in Paragraph 1.c above. In the event of such a dispute, the USS Parties shall provide the Mariposa Franchisees with access to the CAMS Data (of the same type and nature set forth in Paragraph 1 above) necessary to

show the DHL Services provided to the Mariposa Franchisees and/or their customers.

The "dispute resolution procedures" applicable to freight disputes and disputes concerning the Mariposa franchisees' indemnification obligation were set forth in paragraph 1.c of the settlement agreement. That provision required that "any dispute" be resolved "exclusively by binding arbitration" on an expedited basis. While paragraph 1.c itself referred to freight payments, paragraph 1.c was also incorporated by reference into paragraph 3.a, which addressed dispute resolution related to the indemnification provision.

¶10     After the execution of the settlement agreement, the USS parties continued the DHL litigation. In September 2010, DHL moved for partial summary judgment on its counterclaim that USSL was liable to DHL for all amounts due for shipping, including the amounts that had not been paid by the Mariposa franchisees. The next month, the district court granted DHL's motion and ruled that USSL was liable to DHL for all unpaid shipping services provided to the USS franchise system. The district court did not, however, determine the amount owed to DHL for those services.

¶11     After the district court's ruling on DHL's motion, DHL and the USS parties entered into settlement negotiations and eventually executed a settlement agreement resolving the DHL lawsuit (the DHL settlement agreement). That settlement agreement specified that the payment from DHL to the USS parties was to be offset by the amount owed to DHL for unpaid shipping services, including the amount resulting from the Mariposa franchisees' failure to pay. After entering the DHL settlement agreement, the USS parties informed the Mariposa franchisees of the agreement in a letter dated February 16, 2011. The letter informed the Mariposa franchisees of their indemnification obligation and provided the Mariposa franchisees, for their respective franchises, with the CAMS data showing the amounts owed for unpaid DHL services,

as the parties had previously done for resolving the issue of the freight payments.

¶12    The Mariposa franchisees responded by letter in March 2011. The letter asked that the USS parties "provide additional information with which [the Mariposa franchisees] can evaluate the claims made by USS relating to the settlement of the Mariposa action." Two days later, the USS parties sent a second letter, which explained that "USS and USSL received payment in an amount that was offset by the amounts owing to DHL for shipping services provided to USS and its franchisees." The USS parties' letter also stated:

> Your letter does not constitute a "dispute" under the Mariposa Settlement Agreement. Under that agreement, if a Mariposa Franchisee disputes any of the amounts set forth in the CAMS data provided by USS, he or she was required to provide notice of the dispute, together with documentation showing the basis for the dispute, to USS within 20 days of my letter. As they have elected not to do so, in accordance with the Mariposa Settlement Agreement, they are deemed to have not disputed the shipping amounts contained in the CAMS data provided to them by USS, and USS will pursue its rights under the Mariposa Settlement Agreement.

A number of the Mariposa franchisees then started making payments to the USS parties to satisfy their indemnification obligation. Counsel for the still noncompliant Mariposa franchisees sent another letter to the USS parties. In early June 2011, the USS parties sent a third letter to the noncompliant Mariposa franchisees, identifying the specific amounts owed by each and requesting that each indicate whether that amount was disputed.

¶13    After the third letter, a few more Mariposa franchisees fulfilled their indemnification obligation by executing a promissory

note, as required by the settlement agreement. The remaining noncompliant franchisees did not respond. In July 2011, the USS parties served the remaining Mariposa franchisees with "Disputed Notices," initiating the expedited arbitration proceedings set forth in the settlement agreement. In anticipation of the notices, the Mariposa franchisees filed the complaint commencing the lawsuit now before us on appeal. The complaint disputed the amounts owed, the accuracy of the information provided by the USS parties, and the Mariposa franchisees' indemnification obligation itself. The complaint sought declaratory and injunctive relief. Ten days later, the Mariposa franchisees sent a letter to the USS parties' counsel, stating that the Mariposa franchisees would not participate in arbitration.

¶14    The USS parties moved to compel arbitration in early August 2011, and the Mariposa franchisees opposed the motion. The district court determined that, as a matter of law, the terms of the settlement agreement required that the parties resolve their disputes in accordance with the arbitration procedure set forth in paragraph 1.c of the agreement. The district court then dismissed the Mariposa franchisees' complaint, and they appealed.

ISSUE AND STANDARD OF REVIEW

¶15    We must determine whether the district court erred in its interpretation of the parties' settlement agreement and its subsequent grant of the USS parties' motion to compel mandatory arbitration. "A determination of which claims the parties intended to be subject to arbitration requires that we interpret the arbitration clause of the contract. This we do as a matter of law unless we find ambiguity in the plain language of the agreement." *See Peterson & Simpson v. IHC Health Servs., Inc.*, 2009 UT 54, ¶ 18, 217 P.3d 716. "In evaluating whether the plain language is ambiguous, we attempt to harmonize all of the contract's provisions and all of its terms. . . . Accordingly, we first look to the plain language within the four corners of the agreement to determine the intentions of the

parties, and we attempt to harmonize the provisions . . . of the agreement.*" Central Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599 (internal citations and quotation marks omitted).

## ANALYSIS

### I. The District Court Correctly Construed the Arbitration Provision.

#### A. Utah Favors Arbitration.

¶16    We begin our analysis with the Utah Uniform Arbitration Act. *See* Utah Code Ann. §§ 78B-11-101 to -131 (LexisNexis 2012).[1] The Act provides that in the event of a disagreement about whether there is an applicable agreement to arbitrate a dispute, "the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate." *See id.* § 78B-11-108(1)(b).

¶17    Utah courts have consistently recognized Utah's policy favoring arbitration.

> [I]f there is any question as to whether the parties agreed to resolve their disputes through arbitration or litigation, i.e., through the filing of a complaint and recording of a *lis pendens*, we interpret the agreement keeping in mind our policy of encouraging arbitration. It is the policy of the law in Utah to interpret contracts in favor of arbitration, in keeping with our policy of encouraging extrajudicial

---

1. The Utah Arbitration Act was enacted in 2002, with an effective date of May 15, 2003. *See* Utah Code Ann. §§ 78-31a-1 to -20 (LexisNexis 2002). The Act was renumbered in 2008. *See id.* §§ 78B-11-101 to -131 (LexisNexis 2008).

resolution of disputes when the parties have agreed
not to litigate.

*Parkwest Assocs.*, 2002 UT 3, ¶ 16 (citations and internal quotation marks omitted). In short, if the settlement agreement's arbitration clause supports an interpretation favoring arbitration, the district court ruled correctly in interpreting the provision as governing the dispute between the USS parties and the Mariposa franchisees.

B. Scope of The Settlement Agreement's Arbitration Clause

¶18    At the time of the settlement between the Mariposa franchisees and the USS parties, all outstanding issues had been resolved except for two amounts that they left for resolution at a future date: (1) the amount that the USS parties were owed for unpaid freight and (2) the amount that the Mariposa franchisees were obligated to pay to indemnify the USS parties for unpaid DHL shipments. In paragraphs 1.c and 3.a of the agreement, the parties clearly indicated their intention that "any dispute" be resolved through the binding arbitration procedure set out in paragraph 1.c. Reading the agreement in its entirety in an attempt to harmonize all provisions, *see Parkwest Assocs.*, 2002 UT 3, ¶ 12, it is logical to conclude that the parties intended for the settlement agreement to resolve all the issues that could be resolved at that time and to leave the two remaining issues to be addressed at a later date, with ultimate resolution through arbitration in the event of a dispute. Because the district court in the DHL lawsuit found that the USS parties were liable for the DHL shipments resold by the Mariposa franchisees and for which payment had not been made, it was clear that the indemnification provision of the settlement agreement had already been triggered. Therefore, any dispute that the Mariposa franchisees had regarding that indemnification amount was to be resolved by arbitration.[2]

---

2. We note that section 78B-11-107(3) of the Utah Arbitration Act states: "An arbitrator shall decide whether a condition precedent

(continued...)

II. The District Court Erred in Dismissing the Mariposa
Franchisees' Complaint When It Compelled Arbitration.

¶19    The Utah Arbitration Act requires that when a district court orders arbitration, the court should stay the underlying lawsuit rather than dismiss it. *See* Utah Code Ann. § 78B-11-108(7) ("If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration."). Therefore, the district court should have stayed the action rather than dismiss the Mariposa franchisees' complaint after it ordered the parties to arbitrate their dispute.

CONCLUSION

¶20    The district court correctly ordered the parties into arbitration to resolve their dispute relating to the amounts owed for DHL shipments. We affirm that ruling. We reverse the dismissal of the underlying complaint and remand with instructions to reinstate the action, which may then be dealt with, as appropriate, following arbitration.[3]

────────

2. (...continued)
to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable." Utah Code Ann. § 78B-11-107(3) (LexisNexis 2012).

3. We were advised at oral argument that the arbitration has now been completed. It may well be that confirmation of the arbitration award is now in order.