**2017 UT App 73**

## THE UTAH COURT OF APPEALS

JOSEPH EDWARDS,
Appellee,
*v.*
MICHAEL CAREY AND WENDY CAREY,
Appellants.

Opinion
No. 20151096-CA
Filed May 4, 2017

Third District Court, Salt Lake Department
The Honorable Mark S. Kouris
No. 150905215

Andrew G. Deiss, Diana F. Bradley, Shannon Z.
Peterson, and Alejandro E. Moreno, Attorneys
for Appellants

Peter W. Billings, Timothy K. Clark, Richard F.
Ensor, and Michael C. Barnhill, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
GREGORY K. ORME and J. FREDERIC VOROS JR. concurred.

ROTH, Judge:

¶1　Michael Carey and Wendy Carey (collectively, the Careys)[1] appeal the district court's order denying their motion to compel Joseph Edwards to arbitrate his claims against them. We affirm.

---

1. When referring to the Careys individually, we use their first names for clarity.

¶2    In 1985, Edwards and Michael founded Seirus Innovative Accessories Inc. (Seirus). Each owned fifty percent of the company's stock. And since 1985, Edwards, Michael, and Wendy served together as the only members of the Seirus Board of Directors (the Board).

¶3    Each of the three directors also served as officers of the company. Michael was the president and, later, chief executive officer; Wendy served as its chief operations officer, and, later, its chief financial officer, secretary, and treasurer; and Edwards appears to have been the co-president, secretary, and treasurer. As officers of the company, each signed an employment agreement with Seirus. The employment agreements contained an arbitration provision:

> Employer and Employee agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance, or breach of this Agreement shall be settled and decided by arbitration conducted by the American Arbitration Association . . . .

Michael's agreement also expressly stated that his "duties as CEO are independent and in addition to any other position [Michael] may hold with Employer from time to time."

¶4    In 2015, disputes arose between the parties regarding the interest rates on certain shareholder promissory notes Edwards held representing his loans to the company, which culminated with Edwards filing suit against Seirus to recover interest he alleged was due under the notes. Subsequently, Michael determined, "in his business judgment as President and CEO," that Edwards' actions rendered him incapable of "neutrally serving as an Officer of [Seirus]" and recommended to the Board that Edwards be removed from his positions as co-president and secretary. In a board meeting on July 27, 2015 (the Meeting), Michael, the Board's chair, proposed that Edwards be removed as an officer of Seirus. Michael and Wendy voted to approve the

proposal, while Edwards voted to oppose it. The proposal was therefore approved by a majority of the Board, and Edwards was removed from management. Nonetheless, Edwards remained a director and member of the Board.

¶5    During the Meeting, Michael also proposed that the Board approve an Equity Exchange Offering (the Equity Exchange) through which the shareholders—Michael and Edwards—could choose to convert the debt Seirus owed them into equity shares in the company. As of the date of the Meeting, Seirus owed its two shareholders over $6.8 million, and Michael advised the Board that the exchange plan would "allow Seirus to capitalize itself without having to raise funds to repay the debt, increasing cash flow, decreasing expenses and increasing profits by eliminating interest payments." Again, Michael and Wendy voted in favor, while Edwards voted against, and the proposal was thereby approved. Subsequently, Michael, acting as a shareholder, elected to cancel nearly $4 million of debt owed to him by Seirus, which increased his shares in the company. Edwards did not elect to cancel any debt. As a result, Michael's shareholder interest in the company increased to 55.44%, while Edwards' interest decreased proportionally to 44.56%.

¶6    Edwards filed suit two days after the Meeting. In his complaint, as later amended, Edwards alleged that the Careys "engaged in efforts to remove [him] from the Company's management and to minimize his ownership position in the Company." Edwards identified two corporate actions in particular that led to his removal and minimized his ownership position—that during the Meeting, the Careys proposed and voted to terminate him as an officer and employee, "provid[ing] false reasons . . . and purported reasons that were over fifteen years old and had never been raised and discussed with [him]," and that they also proposed and voted to approve the Equity Exchange, which was ultimately exercised by Michael in his shareholder capacity to reduce Edwards' ownership in the company's stock.

¶7     Edwards' claims for relief focused on these two corporate actions. He claimed that Michael and Wendy, acting as directors, had conflicts of interest that justified setting aside the actions they took by vote in the Meeting; that Michael and Wendy breached the fiduciary duties they owed to Seirus and to Edwards as a shareholder; that removal of Michael and Wendy as directors was "in the best interest of the Company"; and that Michael and Wendy, as directors, did not provide him with a fair opportunity to "exercise his preemptive rights" related to acquisition of stock shares, which resulted in a dilution of "his percentage ownership of the Company's outstanding shares." In his prayer for relief, Edwards requested that the court declare void his termination and the adoption of the Equity Exchange as well as "any other stock issuances"; that Michael and Wendy be removed as directors; and that he be awarded a monetary judgment on his breach of fiduciary duty claims.

¶8     Michael and Wendy filed a motion to compel arbitration and stay the proceeding in the district court. They claimed arbitration was mandatory because "Edwards' claims against the Careys relate directly to the performance of their duties as officers and employees of Seirus" and were therefore governed by the arbitration clauses in Michael's and Wendy's employment agreements. Recognizing that the arbitration provisions applied only to disputes between Seirus and the Careys and that Edwards was not a party to their employment agreements, the Careys asserted that Edwards' claims against them were "derivative claims belonging to Seirus" and not to Edwards individually.

¶9     The district court denied the Careys' motion. It identified two questions essential to the determination of whether Edwards' claims were subject to mandatory arbitration: (1) whether the Careys' actions were "within the scope of the employment agreements," and, if so, (2) whether Edwards' claims were derivative claims belonging to Seirus rather than to Edwards himself. The court determined that, while "the management structure and [the Careys'] overlapping roles as

directors and officers" may at times make it "difficult to precisely determine which hat they were wearing at different times," Edwards' claims "are primarily asserted against the Careys for actions they took as *directors* of the Company," not as officers. The court also noted that "Edwards has affirmatively stated that he is only pursuing claims against the Careys for their actions as directors." The court then concluded that "the employment agreements do not govern Edwards' claims" because "the Careys concede[d] that the employment agreements only 'govern the performance of their duties as officers'" of Seirus and "the allegations of the Amended Complaint clearly focus on the Careys' actions as directors." Because the court decided that Edwards' claims were not subject to the arbitration provisions of the employment agreements, it determined that the subsidiary question of whether Edwards' claims belonged to the corporation need not be addressed.

¶10    The Careys appeal, asking that we reverse the district court's decision and order the case to arbitration. "Whether a trial court correctly decided a motion to compel arbitration is a question of law which we review for correctness, according no deference to the district judge." *MacDonald Redhawk Investors v. Ridges at Redhawk, LLC*, 2006 UT App 491, ¶ 2, 153 P.3d 787 (brackets, citation, and internal quotation marks omitted).

¶11    The arbitration provision of the Careys' employment agreements provides that "any dispute or controversy arising out of or relating to any interpretation, construction, performance, or breach of this Agreement shall be settled and decided by arbitration." Thus, as the district court recognized, for Edwards' claims to be subject to arbitration, (1) the Careys must demonstrate that the actions Edwards complains of fell within the scope of their employment as corporate officers, and (2) because the agreements were between Seirus and Michael and Wendy as employees and officers of the company, the Careys must show that Edwards' claims belong to the corporation rather than Edwards himself. We agree with the district court that Edwards' claims are not subject to the

arbitration provision, and as a result, like the district court, we do not reach the question of whether the claims belong to Edwards or Seirus.

¶12   The Careys essentially contend that they acted as both officers and directors in the Board actions of which Edwards complains. For example, they assert that Michael, acting in his role as CEO and president, "decided to recommend that Seirus terminate Edwards as an officer only after repeatedly observing Edwards put his own self-interest ahead of the interests of the company." And they allege that, in the same capacity, Michael also "determined it was necessary for the company to retire its debts to the stockholders," and therefore recommended the Equity Exchange to the Board. Similarly, the Careys assert that Wendy, acting as secretary, treasurer, and CFO, was "intimately involved in the details" of the Equity Exchange, which involved "issu[ing] additional stock to any stockholder electing to participate" in the plan; "updat[ing] and manag[ing] the company's stock ledger after Michael elected to convert the entirety of the debt owed to him by the company into equity"; and "act[ing] as the face of the company in its interactions with its primary banker." They therefore argue that Edwards' claims of wrongdoing, and the allegations and facts supporting them, necessarily relate to their conduct as officers as well as directors and board members. And, they assert, because the claims and allegations necessarily relate to their conduct as officers, the policy favoring arbitration "compels the conclusion that Edwards' claims must be arbitrated."

¶13   The Careys are correct that there is a strong policy favoring arbitration. *See, e.g.*, *Mariposa Express, Inc. v. United Shipping Solutions, LLC*, 2013 UT App 28, ¶¶ 16–17, 295 P.3d 1173. However, because "'[a]rbitration is a matter of contract[,] . . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Cade v. Zions First Nat'l Bank*, 956 P.2d 1073, 1076–77 (Utah Ct. App. 1998) (quoting *AT & T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986)). Thus, "the presumption in favor of

arbitration does not create a presumption in favor of finding that an agreement to arbitrate actually exists." *Kenny v. Rich*, 2008 UT App 209, ¶ 28, 186 P.3d 989. Rather, "policies supporting liberal enforcement of arbitration agreements inhere only once the arbitration agreement is established." *Id.* (citation and internal quotation marks omitted). In other words, "[o]nly when such [an] agreement on arbitration exists may we encourage arbitration by liberal interpretation of the arbitration provisions themselves." *Cade*, 956 P.2d at 1077 (citation and internal quotation marks omitted); *cf. Howard v. Ferrellgas Partners, LP*, 748 F.3d 975, 977 (10th Cir. 2014) ("Everyone knows the Federal Arbitration Act favors arbitration. But before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must *agree* to have their disputes arbitrated.").

¶14　We agree with the district court that no agreement to arbitrate applies to Edwards' claims. In particular, we reject the Careys' contention that, because they wear different hats within the company, it is not possible to distinguish their actions as directors from their actions as officers. Rather, we agree with the district court that a review of Edwards' amended complaint demonstrates that it plainly focused on the Careys' actions as directors of Seirus, not as officers and employees, and that, as a result, the arbitration provisions in the Careys' employment agreements do not come into play.

¶15　The actions from which Edwards seeks relief are "the termination of Edwards as an employee and officer of the Company" and the adoption of "the plan to convert shareholder debt to additional shareholder equity (or any other stock issuances)." Edwards alleged in his amended complaint that these actions were taken at "the Company's July 27 Board of Directors meeting" where Michael and Wendy "voted in favor of terminating Edwards as an employee and officer" and "converting . . . shareholder debt to equity," with only Edwards "vot[ing] against the proposed corporate action." Thus, Edwards challenges decisions the Careys made as members of the Board. Michael was elected Chairman of the Board for the Meeting, and

he proposed the allegedly wrongful actions to the Board in that capacity. Both actions were officially adopted only when Michael and Wendy, acting as directors and board members, out-voted Edwards.

¶16   And even if Michael made recommendations to the Board as CEO and president or Wendy took certain actions as treasurer, secretary, and CFO to bring the recommendations to the Board, the effect of any recommendation or employee action Michael or Wendy might have made to facilitate either action before the Meeting or to implement the changes after the Meeting depended entirely upon the Board's decisions adopted on their majority votes as Board members. And Michael's later decision to actually convert his loan to Seirus into shares of the company, which changed the relative percentages of share ownership to Edwards' disadvantage, was necessarily a function of his position as a Seirus shareholder and creditor, not as president and CEO of the company.

¶17   Further, the amended complaint's factual allegations focused on the Careys' actions as directors (and, in Michael's case, as a shareholder). Edwards alleged, for example, that the Careys "engaged in efforts to remove [him] from the Company's management and to minimize his ownership position in the Company." These efforts included calling the Meeting; proposing "corporate action" at the Meeting to oust him as an employee and an officer and to adopt the stock conversion plan; voting to approve both proposed actions; approving terms of the Equity Exchange that permitted Michael but not Edwards to gain more than 50% ownership in the company; and proposing and approving the challenged actions "to benefit themselves exclusively" in retaliation for Edwards' past conduct.

¶18   Moreover, most of Edwards' causes of action refer only to the Careys' actions as directors. For example, the first cause of action asked the court to "void the July 27, 2015 corporate actions" terminating "Edwards as an officer and employee of the Company" and approving "the conversion of shareholder debt

to shareholder equity program" on the basis that Michael and Wendy had a conflict of interest as directors. The third cause of action sought to have Michael and Wendy removed "as directors of the Company," due to their "dishonest conduct and/or . . . gross abuse of discretion" "in regard to the Company and/or Edwards." The fourth cause of action alleged that Utah law requires that "the board of directors must provide shareholders possessing preemptive rights with a 'fair and reasonable opportunity' to exercise" those rights and that the Careys "did not provide Edwards" with that opportunity. And the fifth claim requested a declaratory judgment that both the decision to oust Edwards as an officer and approve the Equity Exchange are "of no force and effect," that "[a]ny action taken by [the Careys] to take ownership or control over more than fifty percent (50%) of the stock of the Company is of no force and effect," and that the Careys "are removed as Directors of the Company." All of these claims requested relief on the basis of the Careys' actions as directors of Seirus (or in Michael's case as a shareholder and creditor), not as officers or employees.

¶19    Edwards' second claim for relief—breach of fiduciary duty—began by asserting generally that Wendy and Michael, as Seirus' "only officers and as directors, owe a fiduciary duty to [Seirus] and its shareholders" and that "no director or officer can place himself or herself in a position that would subject him [or her] to conflicting duties or engage in self-dealing." But when viewed in the context of the complaint as a whole, Edwards' specific claims are limited to the Careys' actions as directors and Michael's decision as creditor and shareholder to convert the debt to equity. *Cf. Geros v. Harries*, 236 P. 220, 222 (Utah 1925) (explaining that, rather than considering certain paragraphs of a complaint in isolation, the complaint is to be construed "as a whole"); *McNair v. State*, 2014 UT App 127, ¶ 14, 328 P.3d 874.

¶20    The second claim for relief was worded in broad, general terms—it stated that the Careys "breached their fiduciary duty to [Edwards] by repeatedly acting (in unison) in ways to intentionally damage [him], by actively utilizing their power on

the Company's board of directors to gain an advantage over [him], and by together, refusing to act honestly and fairly with [him]." But Edwards specified only two corporate actions in the amended complaint from which he sought relief: the Careys' decisions "to remove Edwards from the Company's management and to minimize his ownership position in the Company" through the adoption of the Equity Exchange. Both of those decisions were made in the Meeting as a result of the Careys voting "in unison" as directors against Edwards. Thus, although the second claim for relief included generic references to fiduciary duties arising from the Careys' roles as corporate officers, in the context of the amended complaint as a whole, the claim does not seek relief related to the Careys' performance of their duties as corporate officers.

¶21  In sum, even if the Careys wear different hats in the company, and even if as officers they made recommendations to the Board that led to the harm Edwards alleges, we agree with the district court that the Careys wore only the attire of corporate directors during the Meeting where they acted as a majority of the Board in deciding to terminate Edwards' employment and adopt the Equity Exchange that resulted in a dilution of Edwards' ownership interest in Seirus. As a result, this is not a case when the policy favoring arbitration comes into play. *See Kenny v. Rich*, 2008 UT App 209, ¶ 28, 186 P.3d 989 ("[T]he presumption in favor of arbitration does not create a presumption in favor of finding that an agreement to arbitrate actually exists.").

¶22  Accordingly, we affirm the district court's denial of the motion to arbitrate. We conclude, as did the district court, that Edwards' claims do not implicate the employment agreements, and as a result, we need not reach the question of whether Edwards' claims are derivative.

_____