**2019 UT App 182**

## THE UTAH COURT OF APPEALS

JOSEPH EDWARDS,
Appellant,
*v.*
MICHAEL CAREY, WENDY CAREY, AND
SEIRUS INNOVATIVE ACCESSORIES INC.,
Appellees.

Opinion
No. 20180427-CA
Filed November 15, 2019

Third District Court, Salt Lake Department
The Honorable Mark S. Kouris
No. 150905215

Peter W. Billings and David P. Billings,
Attorneys for Appellant

Andrew G. Deiss and Shannon Petersen,
Attorneys for Appellees Michael Carey and
Wendy Carey

Nathan D. Thomas and Elizabeth M. Butler,
Attorneys for Appellee Seirus Innovative
Accessories Inc.

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and KATE APPLEBY
concurred.

ORME, Judge:

¶1　Joseph Edwards appeals the district court's dismissal of his lawsuit against Michael Carey, Wendy Carey, and Seirus Innovative Accessories, Inc. (Seirus) (collectively, Defendants) for forum non conveniens. We reverse. In admittedly oversimplified terms, the district court erred in according Edwards's choice of forum only some deference instead of

greater deference and by considering whether the relevant criteria merely outweighed, as opposed to strongly outweighed, the deference properly to be accorded the plaintiff's forum choice.

BACKGROUND[1]

¶2      In 1985, Edwards and Michael[2] co-founded Seirus, a Utah company with its principal place of business in San Diego, California. Until 2015, Edwards and Michael each held a 50% interest in Seirus and, together with Wendy, served as the officers and directors of the company, each holding various positions throughout the years.

¶3      Between 2003 and 2009, Edwards and Michael each loaned money to Seirus. These debts were memorialized in the form of several promissory notes. Edwards held six such notes (the Promissory Notes), each providing that it "shall be governed by and construed in accordance with the laws of the State of California."[3] On July 10, 2015, Edwards filed suit against Seirus in Utah for failure to pay the full interest owed on the

---

1. "When reviewing a motion to dismiss, we view the facts and construe the complaint in the light most favorable to the plaintiff and indulge all reasonable inferences in his favor." *Energy Claims Ltd. v. Catalyst Inv. Group Ltd.*, 2014 UT 13, ¶ 3 n.1, 325 P.3d 70 (quotation simplified).

2. As is our practice when parties share a last name, we sometimes refer to them by their first names, with no disrespect intended by the apparent informality.

3. Five of the six promissory notes include this identical language. The sixth note provides that it "shall be governed as to validity, interpretation, construction, effect and in all other respects by the laws and decisions of the State of California."

Promissory Notes. The court ultimately granted partial summary judgment to Edwards in February 2016, ordering Seirus to pay Edwards $215,883.92 in withheld interest, and the parties stipulated to a dismissal of the remainder of that case.

¶4 On July 27, 2015, shortly after Edwards initiated the prior suit, the Careys called a special meeting of Seirus's board of directors. During that meeting, the Careys outvoted Edwards and removed him from his positions as co-president and secretary of Seirus. The Careys also voted, again over Edwards's objection, to adopt a proposed debt-to-equity exchange, which "provided that additional stock could be issued to existing shareholders, through conversion of debt, owed by [Seirus] to a shareholder, into equity." Michael elected to exchange the entirety of Seirus's debt owed to him for additional equity in the company. Edwards, conversely, did not.[4] As a result, Michael's ownership interest increased to 55.44% and Edwards's decreased to 44.56%.

¶5 Two days later, Edwards filed the current action against Defendants. In his initial complaint he (1) asserted conflict of interest against the Careys, (2) asserted breach of fiduciary duty against the Careys, (3) sought removal of the Careys as directors of Seirus, and (4) sought a declaratory judgment undoing the July 27 votes of the board of directors. Edwards amended his complaint (the First Amended Complaint), adding a claim for (5) deprivation of preemptive rights against the Careys. Although Edwards named Seirus as a defendant in his third, fourth, and fifth causes of action, he did not allege any wrongdoing on Seirus's part but apparently named the company as an aid to obtaining complete relief.

---

4. Edwards alleged that he elected not to make the exchange because the plan required him to come up with $762,534 within a week to maintain his 50% ownership interest in Seirus, which he could not do.

¶6     The Careys moved the district court to compel arbitration, which motion the court denied. The Careys appealed the district court's decision, and this court affirmed. *See Edwards v. Carey*, 2017 UT App 73, ¶ 22, 397 P.3d 797. During the pendency of the prior appeal, Edwards began splitting his time between Utah and California, and his residency for tax withholding purposes was eventually changed to California.[5] Following the resolution of the Careys' prior appeal in May 2017, the parties agreed to an informal stay of proceedings so that Seirus could focus on a patent infringement suit it was defending that was scheduled for trial that September.

¶7     In December 2017, the parties filed a stipulated motion authorizing Edwards to amend his complaint for a second time. The court granted the motion, and Edwards filed his second amended complaint (the Second Amended Complaint) in which he still alleged he was a Utah resident. The proposed amended complaint was attached to the motion, and Defendants did not raise an objection to such a complaint being properly brought in Utah.

¶8     The Second Amended Complaint differed significantly from the First Amended Complaint. Edwards brought five new causes of action, keeping only three from the First Amended Complaint: (1) breach of fiduciary duty against the Careys,

---

5. In a sworn declaration, Edwards stated that he was a Utah resident at the time he filed the First Amended Complaint. The following year, in 2016, he "spent more than half of the year in Utah." And in February 2017, he emailed Wendy requesting that Seirus send mail to his residence in San Diego. Wendy responded, asking if she should change his residency status for tax purposes to California. She later followed up on her earlier email, writing that unless he replied in the negative—which he apparently did not—she would make the change. Wendy then changed Edwards's tax withholding from being split between Utah and California to California only.

(2) deprivation of preemptive rights against Defendants, and (3) removal of the Careys as directors of Seirus. Edwards newly alleged that although Seirus had recommenced making regular payment on the Promissory Notes following the court's February 2016 order in the now-dismissed case,[6] it had again stopped paying on the notes in the spring of 2017. Accordingly, Edwards brought new claims against Seirus for (4) breach of contract, (5) breach of the implied covenant of good faith and fair dealing, and (6) entitlement to a declaratory judgment in the form of "an order directing [Seirus] to make regularly scheduled payments [on the Promissory Notes], as they become due." Edwards also brought new claims against Defendants related to a non-compete clause in an agreement (the Buy-Sell Agreement) that he had entered into with them, (7) asserting breach of the implied covenant of good faith and fair dealing, and (8) seeking declaratory relief in the form of "an order directing Defendant[s] . . . to consent to Edwards being released [from the] non-competition [clause] contained in the Buy-Sell Agreement."

¶9      Less than a month after Edwards filed the Second Amended Complaint pursuant to stipulation, Defendants moved the district court to dismiss the complaint for forum non conveniens. They argued that because Edwards, "a California resident, assert[ed] claims against California residents, related to contracts to which California law applies, and where the witnesses reside in California, California provides a substantially more convenient forum."

---

6. Seirus properly did not make payment on the Promissory Notes during the last four months of 2016 pursuant to a subordination agreement Edwards had signed, *see infra* ¶¶ 10, 12, but Edwards alleged that the subordination agreement permitted Seirus to resume making regular payments beginning in January 2017, which it did until spring of that year when it again ceased making payments.

¶10 Seirus's primary lender is a bank located in San Diego County, California (the Bank). Whenever Seirus seeks either to renew or modify its credit arrangement, "the Bank evaluates the strength of Seirus' financial position and, depending on the circumstances, requires personal guarantees and subordination agreements from shareholders holding promissory notes." In August 2016, Edwards entered into one such agreement (the 2016 Subordination Agreement), which expressly provided that it was to be governed by federal and California law.

¶11 Six months later, in April 2017, Seirus sought renewal of its line of credit. The Bank required Seirus to execute an agreement (the Change of Terms Agreement) which, among other things, required that Seirus cause Edwards to execute a new subordination agreement that would indefinitely suspend payment on the Promissory Notes (the 2017 Subordination Agreement). Edwards declined to sign the 2017 Subordination Agreement. Like the 2016 Subordination Agreement, the 2017 Subordination Agreement expressly provided that it was to be governed by federal and California law, and the Change of Terms Agreement invoked the California Code of Civil Procedure.

¶12 In his Second Amended Complaint, Edwards alleged that the 2016 Subordination Agreement "remains the effective agreement between the parties" and that, although "the [2016] Subordination Agreement briefly suspended monthly payments [on the Promissory Notes] at the end of 2016," it permitted Seirus to recommence payment in January 2017. Seirus, conversely, argued that it "underst[ood] the terms of the . . . 2016 Subordination Agreement and subsequent modifications to its line of credit to prohibit Seirus from making—and Mr. Edwards from accepting—payment on the Promissory Notes."

¶13 Accordingly, in their motion to dismiss the Second Amended Complaint, Defendants argued that "resolution of the question of whether Seirus breached any obligation to pay on the Promissory Notes requires the Court to construe and apply the . . . 2016 Subordination Agreement as well as the Change of

Terms Agreement and associated documents[,] all of which invoke California Law." Similarly, the Buy-Sell Agreement, which formed the basis for Edwards's seventh and eighth causes of action, also invoked California law.

¶14    In addition to asserting that Edwards's new causes of action "stem from business conducted in California and [are] subject to California law," Defendants pointed to the following factors in support of their motion to dismiss: although incorporated in Utah, Seirus's principal place of business—along with all of its employees and business records—is located in California; potential third-party witnesses employed by the Bank are also located in California; although Edwards alleged he was a Utah resident in the Second Amended Complaint, he resided in California at the time of filing and represented himself to be a resident of California and employed by a California company on social media; and the Careys are residents of California.

¶15    In his memorandum opposing Defendants' motion, Edwards argued that he still maintained "bona fide and ongoing connections to Utah" and that Defendants "provide[d] no authority to support the proposition that if a plaintiff moves his primary residence to another state during the course of litigation and amends his complaint, all deference due to a plaintiff's choice of venue vanishes." He asserted that his "choice of forum was motivated by legitimate reasons: it was more convenient for him to litigate in Utah and [he] ha[d] the ability to obtain jurisdiction over Defendants in Utah." He further argued that Utah was not any less convenient of a forum in which to litigate the new claims related to the Promissory Notes than it was when Edwards initially filed suit in Utah. He also contended that "[t]he costs related to beginning litigation anew in California would be quite high and the burden would fall entirely on [his] shoulders" and that a dismissal would "greatly harm[]" him "[b]oth in terms of time and expense."

¶16    Following a hearing on the matter, the district court granted Defendants' motion to dismiss for forum non conveniens. Although the court "found Edwards had no

illegitimate reason for choosing Utah as a forum," and recognized that his choice was entitled to "some deference," it concluded that "any deference due to Edwards' chosen forum was outweighed by the remaining *Summa* factors."[7] Specifically, the court determined that California was a more convenient forum, finding that

> (a) the parties are now located in California; (b) the controversy arose in California; (c) the access to proof including witnesses is easier in California, given the relevant witnesses are in California, most relevant documents are located in California and may require assistance of California courts to be obtained from third parties; (d) the judgment would be equally enforceable in Utah or California; and (e) in light of the Second Amended Complaint, it is slightly more of a burden to continue this case in Utah than for Edwards to renew litigation in California.

---

7. The *Summa* factors are:
> (1) the location of the primary parties; (2) the place where the fact situation creating the controversy arose; (3) the ease of access to proof, including the availability and costs of obtaining witnesses; (4) the enforceability of any judgment that may be obtained; (5) the burdens that may be imposed upon the court in question in litigating matters which may not be of local concern; (6) the practical burden plaintiffs will face in filing a new action after dismissal for forum non conveniens; and (7) any other relevant considerations.

*Diversified Striping Sys., Inc. v. Kraus*, 2014 UT App 287, ¶ 8, 341 P.3d 932 (quotation simplified). *See Energy Claims Ltd. v. Catalyst Inv. Group Ltd.*, 2014 UT 13, ¶¶ 36–37, 325 P.3d 70; *Summa Corp. v. Lancer Indus., Inc.*, 559 P.2d 544, 546 (Utah 1977).

¶17    The district court stated that Edwards's decision "to bring the Second Amended Complaint," in which he "assert[ed] direct claims against Seirus that were not asserted in the original or First Amended Complaint and that . . . involve[d] California law," was what had swayed it to rule as it had. "Absent the Second Amended Complaint," the court stated it "would have found the prejudice to Edwards by dismissal would have outweighed any potential inconvenience to Defendants."

¶18    Edwards appeals.


## ISSUE AND STANDARD OF REVIEW

¶19    Edwards challenges the district court's dismissal of his lawsuit for forum non conveniens. "We review a dismissal on forum non conveniens grounds for an abuse of discretion" and "reverse only if (1) the district court relied on an erroneous conclusion of law or (2) there was no evidentiary basis for its ruling." *Energy Claims Ltd. v. Catalyst Inv. Group Ltd.*, 2014 UT 13, ¶ 27, 325 P.3d 70 (quotation simplified).


## ANALYSIS

¶20    "Forum non conveniens is a well-established doctrine that allows a court with jurisdiction over a lawsuit to decline to exercise that jurisdiction, as a matter of discretion, when the cause could better be tried in a more convenient court." *Rocky Mountain Builders Supply Inc. v. Marks*, 2017 UT App 41, ¶ 5 n.3, 392 P.3d 981 (quotation simplified). Its purpose "is to provide protection against a plaintiff selecting a remote court where added time, trouble and expense would result in unreasonable inconvenience and hardship to the defendant." *Summa Corp. v. Lancer Indus., Inc.*, 559 P.2d 544, 545–46 (Utah 1977). Although the doctrine is discretionary, courts should grant motions to dismiss for forum non conveniens "only with great caution and under compelling circumstances." *Id.* at 546.

¶21    Forum non conveniens involves a three-step analysis. First, "courts must determine whether the plaintiff's choice of forum is entitled to deference." *Energy Claims Ltd. v. Catalyst Inv. Group Ltd.*, 2014 UT 13, ¶ 26, 325 P.3d 70. Second, courts must "determine whether an adequate alternative forum exists."[8] *Id.* (quotation simplified). And third, if an adequate alternative forum does exist, courts must analyze and weigh what have come to be known as the *Summa* factors against the deference owed to the plaintiff's choice, as determined under the first step. *See id.* ¶¶ 26, 35–37.

¶22    Edwards argues that "the district court failed to give [his] choice of forum adequate deference under step one" of the forum non conveniens analysis. He also contends that the court's analysis of the *Summa* factors "is hardly a finding of compelling circumstances" sufficient to overcome the deference owed to his choice of Utah as the forum in which to bring suit.[9] We agree with Edwards on both points and address each in turn.

### I. Deference to the Plaintiff's Forum Selection

¶23    Although "a plaintiff's choice of forum is entitled to deference when the plaintiff has brought suit in its home jurisdiction," *Energy Claims Ltd. v. Catalyst Inv. Group Ltd.*, 2014

---

8. In the current case, Edwards concedes "that California is an adequate alternative forum."

9. A significant portion of Edwards's argument on appeal is directed toward the temporal aspect of the district court's forum non conveniens analysis. He argues that the court erred in analyzing the facts as they existed at the time he filed the Second Amended Complaint instead of at the time he filed his original complaint. Because the court's dismissal warrants reversal even under its analysis of the facts as they existed at the time Edwards filed the Second Amended Complaint, we do not reach this particular issue.

UT 13, ¶ 30, 325 P.3d 70, the primary focus of the step-one analysis is whether the plaintiff's choice "was motivated by legitimate reasons," *id.* ¶ 33. *See Diversified Striping Sys., Inc. v. Kraus*, 2014 UT App 287, ¶ 8 n.2, 341 P.3d 932. And courts "give greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons." *Energy Claims*, 2014 UT 13, ¶ 32 (quotation simplified). Factors courts consider in making this determination include "the plaintiff's or the lawsuit's bona fide connection to the forum of choice," *id.* (quotation simplified), and whether "it appears . . . that the plaintiff has selected an inconvenient forum for the purpose of harassing or annoying the defendant," *Summa Corp. v. Lancer Indus., Inc.*, 559 P.2d 544, 546 (Utah 1977), or for "tactical advantage,"[10] *Diversified Striping*, 2014 UT App 287, ¶ 8 n.2 (quotation simplified). The factors courts consider should relate to whether the "plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71–72 (2d Cir. 2001), *cited with approval in Energy Claims*, 2014 UT 13, ¶¶ 31–33.

¶24 In the current case, the district court determined that Edwards's forum selection was entitled to only "some deference." But in reaching this conclusion, the court expressly stated that it "found Edwards had no illegitimate reason for choosing Utah as a forum," a determination that triggers the "greater deference" regimen under *Energy Claims*, and the court did not articulate any appropriate considerations that would have steered it toward according Edwards less deference than the "greater deference" due him under *Energy Claims*. To the

---

10. "Courts should [also] be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* . . . [for] similar forum-shopping reasons." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 75 (2d Cir. 2001). But such considerations are better reserved for the third step of the forum non conveniens analysis. *See id.*

contrary, the court specifically stated that it did not believe Edwards originally filed the case in Utah to gain advantage or that he desired to retain the case in Utah for strategic reasons.

¶25 The only factor that the court relied on in reducing the level of deference to be accorded to Edwards was that Edwards chose to file the Second Amended Complaint in which he "add[ed] . . . extra counts" and "br[ought] Seirus into the case" in a more substantial way. The court stated that these considerations decreased the level of deference "quite a bit." But absent additional findings detailing how these facts relate to the legitimacy of Edwards's motivations in seeking to litigate the new claims in Utah, they are irrelevant to the deference analysis. Indeed, Defendants stipulated to the filing of the Second Amended Complaint, and the court expressly found that Edwards did not seek to retain the case in Utah for strategic reasons. And because the court found that Edwards filed the Second Amended Complaint and sought to keep the case in Utah for no illegitimate reason, such facts are more appropriately considered under the third step of the forum non conveniens analysis—and not the first.

¶26 In light of the totality of the court's findings in this matter weighing in favor of according "greater deference" to Edwards's choice and no appropriate consideration supporting a reduction in the level of deference to that of "some deference," the court exceeded its discretion in not according a high level of deference to Edwards's selection of Utah as the forum in which to litigate his claims against Defendants—a Utah company and its principals. *See Energy Claims*, 2014 UT 13, ¶ 27.

## II. Weighing of the *Summa* Factors

¶27 After determining the appropriate level of deference owed to a plaintiff's forum choice, and if an adequate alternative forum exists, as Edwards concedes it does, *see supra* ¶ 21 n.8, courts must lastly analyze and weigh the *Summa* factors. As previously noted, these factors are

(1) the location of the primary parties; (2) the place where the fact situation creating the controversy arose; (3) the ease of access to proof, including the availability and costs of obtaining witnesses; (4) the enforceability of any judgment that may be obtained; (5) the burdens that may be imposed upon the court in question in litigating matters which may not be of local concern; (6) the practical burden plaintiffs will face in filing a new action after dismissal for forum non conveniens; and (7) any other relevant considerations.

*Diversified Striping Sys., Inc. v. Kraus*, 2014 UT App 287, ¶ 8, 341 P.3d 932 (quotation simplified). *See Energy Claims Ltd. v. Catalyst Inv. Group Ltd.*, 2014 UT 13, ¶¶ 36–37, 325 P.3d 70; *Summa Corp. v. Lancer Indus., Inc.*, 559 P.2d 544, 546 (Utah 1977).

¶28    Courts may grant motions to dismiss for forum non conveniens only when "the [*Summa*] factors . . . *preponderate so strongly* against trying the case here, and in favor of the greater convenience of trying it somewhere else, that to deny the motion would work a great hardship upon the defendant." *Summa*, 559 P.2d at 546 (emphasis added). *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70 (2d Cir. 2001) ("Unless the balance is *strongly* in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." (emphasis added) (quotation otherwise simplified)), *cited with approval in Energy Claims*, 2014 UT 13, ¶¶ 31–33; *Iragorri*, 274 F.3d at 74–75 ("The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum *significantly* preferable.") (emphasis added); 20 Am. Jur. 2d *Courts* § 116 (2019) ("Deference is to be given to the plaintiff's choice of forum; unless the balance, upon weighing the relative advantages and obstacles to a fair trial, is *strongly* in favor of the defendant, the plaintiff's choice of forum should not be disturbed.") (emphasis added).

¶29    Here, the district court erred in dismissing Edwards's suit on the ground that, with our emphasis, "in light of the Second

Amended Complaint . . . any deference due to Edwards' chosen forum *was outweighed* by the remaining *Summa* factors." To dismiss an action for forum non conveniens, courts must find that the *Summa* factors *strongly* outweigh the deference owed to the plaintiff's choice, which the district court did not find in this case.

¶30　Defendants assert that "[b]ecause the [*Summa*] factors weigh so heavily in favor of litigating this matter in California and outweigh any deference afforded to Edwards' chosen forum, no amount of deference the district court afforded Edwards' chosen forum would have been sufficient to surmount them." Defendants' argument on this point is limited to a recitation of the court's *Summa* analysis followed by the assertion that, "[p]lainly, the *Summa* factors collectively heavily favored dismissal of the litigation for *forum non conveniens* and outweighed any deference to Edwards' chosen forum." We are unconvinced.

¶31　As an initial matter, the district court did not so indicate when it stated that the *Summa* factors "outweighed"—as opposed to strongly outweighed—even the lower threshold of deference it had accorded to Edwards's forum selection. Thus, in analyzing the *Summa* factors, the district court found, with our emphasis, that

> (a) the parties are now located in California; (b) the controversy arose in California; (c) the access to proof including witnesses is easier in California, given the relevant witnesses are in California, most relevant documents are located in California and may require assistance of California courts to be obtained from third parties;[11] (d) the judgment

---

11. We note that our Supreme Court recently clarified "that the location of documentary evidence is of little relevance to the

(continued…)

would be equally enforceable in Utah or California; and (e) in light of the Second Amended Complaint, it is *slightly* more of a burden to continue this case in Utah than for Edwards to renew litigation in California.[12]

¶32 Although the district court concluded that several of the *Summa* factors favored dismissal for forum non conveniens,[13] in weighing those considerations against "the practical burden [Edwards] will face in filing a new action after dismissal," *see Energy Claims*, 2014 UT 13, ¶ 37, the court concluded that "it is slightly more of a burden to continue this case in Utah than for Edwards to renew litigation in California." And where the totality of the *Summa* considerations weighing in favor of dismissal only slightly outweighed the final factor considered by the court, i.e., the inconvenience dismissal of the suit would cause Edwards, such slight tipping of the scales in the *Summa*

---

(…continued)

overall forum non conveniens analysis." *Energy Claims Ltd. v. Catalyst Inv. Group Ltd.*, 2014 UT 13, ¶ 39, 325 P.3d 70.

12. In its oral ruling, the court also found that "the burdens of this Court retaining the case . . . favor . . . moving the case." But this consideration "carries little weight" where plaintiffs have selected a forum "for legally legitimate reasons." *Id.* ¶ 40.

13. One factor cutting the other way that the district court did not consider, but perhaps should have, is Defendants' stipulation to Edwards's motion seeking leave to file the Second Amended Complaint. The motion included the proposed amended complaint as an attachment. If Defendants were truly concerned that Utah would prove an inconvenient forum for resolution of the Second Amended Complaint, it is curious that they forwent any objection to the proposed amended complaint on those grounds and, indeed, went so far as to stipulate to its filing in Utah.

analysis in favor of dismissal is insufficient to strongly outweigh the greater level of deference to which Edwards's forum selection is entitled.

¶33 Accordingly, the district court exceeded its discretion by concluding that the balance of the *Summa* factors need merely outweigh, as opposed to strongly outweigh, the deference owed to the plaintiff's choice of forum. In so doing, the court "relied on an erroneous conclusion of law" in rendering its decision. *See id.* ¶ 27 (quotation simplified).

### III. Remand Is Unnecessary

¶34 Defendants argue that in the event we conclude that "the district court did not award the proper level of deference [to Edwards's choice of forum], remand is required for a rebalancing of the remaining *forum non conveniens* factors." Although the fact intensive nature of the forum non conveniens analysis would ordinarily necessitate remand, our resolution of this case does not require the court to consider or weigh new facts or make additional findings. *Cf. Energy Claims Ltd. v. Catalyst Inv. Group Ltd.*, 2014 UT 13, ¶¶ 33, 37–41, 325 P.3d 70 (remanding for the district court to consider whether the plaintiff's choice of forum "was motivated by legitimate reasons" and providing additional guidance as to what the court should consider under the second and third steps of the forum non conveniens analysis); *Diversified Striping Sys., Inc. v. Kraus*, 2014 UT App 287, ¶¶ 10–11, 341 P.3d 932 (remanding for the district court to consider the parties' forum non conveniens arguments in light of the recent clarification of the issue of deference set forth in *Energy Claims* and to "fully analyze the other factors relevant to the forum non conveniens analysis" that the court had not previously considered). The district court already made all the necessary findings and weighed the various forum non conveniens considerations against each other. And where the court determined that the balance of the *Summa* factors merely outweighed the reduced level of deference it afforded Edwards's choice of forum, it is clear that those same

factors do not *strongly* outweigh the *greater* level of deference to which Edwards is entitled.

CONCLUSION

¶35 The district court exceeded its discretion in reducing the degree of deference owed to Edwards's choice of forum where it expressly found that "Edwards had no illegitimate reason for choosing Utah as a forum" and did not wish to retain the case in Utah for strategic reasons. The court also exceeded its discretion when it erroneously concluded that the balance of its analysis of the *Summa* factors need not strongly outweigh the deference owed to Edwards's forum selection.

¶36 We reverse and remand for trial or such other proceedings as may now be appropriate.

———————